

Legal Mail

Blackwater River Correctional
and Rehabilitation Facility
on 7-9-25 by the ... CMB

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### CIVIL RIGHTS COMPLAINT FORM FOR
### PRO SE PRISONER LITIGANTS IN ACTIONS UNDER
### 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

## KENNETH WARREN FORD ,

Inmate ID Number: **167315** ,

*(Write your full name and inmate ID number.)*

**PLAINTIFF'S SECOND
AMENDED COMPLAINT**

Case No.: 3:24-cv-570-LAC-ZCB
*(To be filled in by the Clerk's Office)*

**v.**

## CHRISTOPHER HUGHES, et al. ,

**Jury Trial Requested?**
☑ **YES**  ☐ **NO**

_____ ,

_____ ,

*(Write the full name of each Defendant who is being sued. If the names of all the Defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

_____ /

FILED USDC FLND PN
JUL 15 '25 AM11:05 MB

## I. PARTIES TO THIS COMPLAINT

A. Plaintiff

Plaintiff's Name: _Kenneth Warren Ford_ ID Number: _167315_

List all other names by which you have been known: _Kenneth W. Ford_

Current Institution: _BLACKWATER RIVER CORRECTIONAL FACILITY_

Address: _5914 JEFF ATES ROAD_

_MILTON, FLORIDA 32583_

B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *each and every* Defendant:

1. Defendant's Name: _Christopher Hughes_

Official Position: _Captain_

Employed at: _Santa Rosa Correctional Institution_

Mailing Address: _5850 East Milton Road · Milton, Florida 32583_

☑ Sued in Individual Capacity          ☐ Sued in Official Capacity

2. Defendant's Name: **Christy Wheaton**

Official Position: **Lieutenant**

Employed at: **Santa Rosa Correctional Institution**

Mailing Address: **5850 East Milton Road · Milton, Florida 32583**

☑ Sued in Individual Capacity        ☐ Sued in Official Capacity

3. Defendant's Name: **Charles Richter**

Official Position: **Major**

Employed at: **Santa Rosa Correctional Institution**

Mailing Address: **5850 East Milton Road · Milton, Florida 32583**

☑ Sued in Individual Capacity        ☐ Sued in Official Capacity

(*Provide this information for all additional Defendants in this case by attaching additional pages, as needed.*)

## II. BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)          ☑ State/Local Officials (*§ 1983 case*)

## III.  PRISONER STATUS

Indicate your confined status:

☐ Pretrial Detainee          ☐ Civilly Committed Detainee

☑ Convicted State Prisoner          ☐ Convicted Federal Prisoner

☐ Immigration Detainee          ☐ Other (*explain below*):

Each defendant is sued in their individual capacity. All the defendants have acted, and continue to act, under color of state law at all times mentioned and relevant to this complaint.

## IV.  STATEMENT OF FACTS

Provide a short and plain statement of the *facts* showing why you are entitled to relief. Describe how *each* Defendant was involved and what each Defendant did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short, numbered paragraphs, limited as far as practicable to a single event or incident. ***Do not make legal arguments, quote cases, cite statutes, or reference a memorandum.*** You may make copies of page 6 if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. Exhibits attached to

## IV. STATEMENT OF FACTS

1. On August 31, 2021 at approximately 12:30pm, plaintiff while incarcerated at Santa Rosa Correctional Institution on Close Management Status, was ordered to pack his property to be moved from G2-205 to F2-205 along with his assigned cell-mate for approximately (4) four months.

2. Santa Rosa Correctional Institution (C.I.), Close Management (C.M.) is for the separation of inmates apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others. The three individual levels (C.M.I, C.M.II, and C.M.III) associated with C.M., with C.M.I being the most restrictive single cell housing level and C.M.III being the least restrictive housing of the three C.M. levels.

3. When inmates are reduced back from C.M.II or C.M.III to C.M.I they're often angry, depressed, hostile, and become extreme management problems. Each named Defendant is aware of this fact.

4. Based on the "number of murders and stabbings" which occur at Santa Rosa C.I., C.M. Unit inmate-on-inmate violence is high. Each named Defendant is aware of this fact.

5. As a result of F.D.O.C. officials efforts to reduce the inmate-on-inmate risk of violence, staff are placed on notice of reasonable measures outlined in F.A.C.-33 and F.A.C.-602-36 to take to investigate, mitigate, or monitor and eliminate known substantial risk of serious harm posed by other inmates-on-inmates. Each Defendant is aware of this fact.

6. Each named Defendant was trained on the risk of violence and assaults that exist in Santa Rosa C.I., C.M. Unit and the risk that the prison officials create by placing inmates in cells with inmates who pose specific risk of serious harm to other inmates.

7. F.A.C. 33 and F.A.C. 602-36 requires - "Prior to placing inmates in the same cell, the inmate will be reviewed by the housing supervisor to determine if any of the inmates in the C.M. unit are a threat to the inmate being placed, or the inmate being placed is a threat to other

inmates in the unit. Officials are required to know and follow this rule.

8. When inmates cannot be placed in the same cell, the housing supervisor will place or maintain the inmate in administrative confinement until the issue can be expeditiously resolved.

9. Staff are also required to report "threats" made by inmates to harm another inmate being housed; write disciplinary reports; search cells for weapons; inform the moving room officials of threats made by inmates to harm another inmate being housed and file incident reports to ensure that inmates who pose "specific risk" are kept separate.

10. Reporting "threats" made by inmates to harm another inmate being housed or informing the moving room officials of said are usually completed by the official calling on their "walkie-talkie" to the moving room or (O.I.C.) Officer In Charge; Captain on shift. Once that is done, inmates are reassigned housing and the process can be "time-consuming" (anywhere from thirty minutes to four hours).

11. Staff often complain to inmates regarding issues between cellmates, "I don't have time for this shit" in reference to the additional paperwork and cell changes that may follow as a result of their reporting yet still follow the rule and make the reports.

12. The housing supervisor is usually a Sergeant assigned to the dormitory or the (O.I.C.) Officer In Charge; Captain on shift. The Captain has total authority and final determination over decisions made regarding inmates and officers.

13. It is mandatory that cells are thoroughly inspected by the housing official to ensure that it is in proper order.

14. As plaintiff arrived in F-Dorm, he and aforementioned cell-mate were housed together in cell#F2-205.

15. At approximately 4:30pm officer Goddard who was working overtime approached cell#F2-205 and stated, "Ford... I hope you havn't unpacked" yet because I gotta move you again."

16. Shortly afterwards, Plaintiff was placed in handcuffs again then escorted downstairs in front of cell#F2-120 to be housed with inmate McNeil, Joseph DC#C09032.

17. Inmate Joseph McNeil DC#C09032 initial referral for C.M. was

due to "A PATTERN OF PREDATORY ACTIONS WHICH MAKES AN INMATE A THREAT TO OTHERS."

18. While on C.M. said inmate continued his actions by increasing disciplinary reports (D.R.'s) for "Disobeying Order, Spoken Threats, Disorderly Conduct, AGVT BTRY/ATT/INMATE" and "boasting" of his reputation for "unprovoked stabbings of his random cellmates" at Santa Rosa C.I.

19. When inmates stab their room-mates at Santa Rosa C.I., C.M. Unit a use of force is conducted. The inmate assaulting is usually sprayed with chemical agents to subdue him while violent or uncooperative. Inmates are then placed inside the shower for a decontamination shower while filmed on a hand-held use of force camera. The Livetantart, or Captain on shift is called and notified of the incident.

20. Defendant's Hughes, Wheaton, and Richter were aware of McNeils reputation of "unprovoked stabbings of his random cellmates" and the specific risk of harm he posed to other inmates due to being "personally involved" with exercising their skills of crisis intervention, counseling techniques, subduing him when violent or uncooperative, or defending persons against his attacks or other approved methods.

21. Officer Goddard and Sergeant Manners knew of McNeils boastful reputation of "unprovoked stabbings of his random cellmates" and as a result of knowing Plaintiff was being moved inside the cell with him while aware of the "specific risk of harm" posed called Defendant Hughes, the Captain and (O.I.C) Officer In Charge.

22. Defendant Captain Hughes entered F2 announcing, "I just got on shift and have all this paperwork and moving to do, I'm not with his bullshit today" while walking towards McNeils cellfront.

23. As plaintiff was being escorted he noticed Defendant Hughes standing in front of cell #F2-120 listening to multiple inmates behind cell doors "brief" him regarding McNeils reputation of "unprovoked stabbings of his random cellmates." Defendant Hughes looked agitated while shaking his head as inmates asserted, "Cap look like you're gonna have more paperwork and moves to do because that dude is a bug and you gonna have to move one of them because he likes to stab his

room-mates so that he can be housed alone.

24. Upon seeing Plaintiff at his cell-front, inmate McNeil began to make a "contextually-credible threat" while staring directly at Defendant Hughes who was present at his cell door by yelling "He not coming in here... I don't want no room-mate because I'm already on my way back to C.M.I and if you put him in here, it's gonna be problems."

25. Simultaneously, inmates housed across the hall in cells #F2-103, #F2-104, and next door in cell #F2-119 continued to protest in briefing Defendant Hughes while stating, "Don't put him in there... That man a bug and you know he just left F-Dorm for checking in on his bunky and stabbing the man while he was asleep... He going back to C.M.I and has nothing to lose Cap; they not compatible."

26. Defendant Hughes heard the inmates loud and clear however he still responded, "Oh he's coming in there... you don't run nothing inmate!"

27. Subsequently, inmate McNeil "contextually-credible threat" became bolder. He exclaimed, "I will stab him like I did my bunky before if you put him in here with me!"

28. Aforementioned inmates housed in cells across the hall and next door began to roar with amusement, "There it is Captain. Told you that he was a check-in and now you gotta move that dude somewhere else" while another "taunted" McNeil stating "If you was really about that you would've never said that knowing Cap can't put him in there with you now but, you scared because you see that man got size on him and he would probaly take your little knife and use it on you" while encouraging Captain Hughes to not follow the rules by stating "If I was you Cap; I wouldn't search the cell or nothing. Don't report it to the moving room. Just put him in there with him and let the best man win. This Santa Rosa and it go down like that here anyway."

29. Defendant Hughes acknowledged that he'd been listening to the statements made by inmates behind the doors. While observing them standing at the cell door windows he turned his head towards the direction of the inmate who'd made the last remark "taunting"

McNeil while nodding agreeably.

30. Defendant Hughes then proceeded to glance at Plaintiff scanning him from head to toe "deliberating," then stare back at McNeil in the same manner tilting his head to the side while considering the differences of their size for determination of following the inmates advice.

31. Inmate McNeil observed Defendant Hughes actions and as a result, left the cell door to retrieve "evidence in the form of disciplinary reports he'd received for stabbing his cell-mates in the past" while placing them on the window to be read by defendant Hughes so he would know of the specific risk of violence he posed, and declaring angrily "Captain Hughes you know me and what I will do because you saw my last one so you better do your paperwork and find that dude another cell."

32. Defendant Hughes began reading the disciplinary report(s) placed on the glass window by McNeil regarding "unprovoked stabbing(s) of his cell-mates)."

33. As a result of Defendant Hughes reading the aforementioned disciplinary report (D.R.); being aware that McNeil had made a "contextually-credible threat; knowing that his job requirement permitted him to take reasonable measures outlined in F.A.C.-33 and F.A.C.-602-36 and report threats made by McNeil to harm Plaintiff to the moving room so that he would be reassigned housing; search McNeil for contraband (weapons); escort him approximately (150) one hundred fifty yards across the compound to a disciplinary confinement dorm which would be extremely "time-consuming" when done properly and not wanting to do all of the aforementioned duties; Defendant Hughes retorted " I don't have time for this shit... I'm getting the gas and camera so I can spray you for refusing him and then afterwards...he's still coming inside!"

34. Simultaneously, Hughes ordered officer Goddard to place plaintiff in the shower holding cell area while calling on his "walkie-talkie" for chemical agents canister and camera to be delivered for usuage on an inmate who refused cell-mate.

35. Defendant Hughes was aware that he should have called the moving room on his "walkie-talkie" to inform them of threats made by

McNeil to harm Plaintiff and the "specific risk" posed for reassigned housing but did not.

36. Instead, Defendant Captain Hughes also ordered the inmate orderly to be escorted around back to place a plastic covering on the back of inmates' McNeil cell window so that chemical agent application would be more extreme when applied.

37. Plaintiff was then placed in the shower area where he observed officer Scarlet deliver hand-held camera for recording of gassing to Captain Hughes as ordered.

38. Instantly, Plaintiff heard chains being placed on the cell door which is protocol before gassing.

39. Inmate McNeil began to scream, "okay... okay...he can come in... I'll let him in!" The shower was approximately (6) six feet away from cell #F2-120 and Plaintiff could hear him loud and clear.

40. Defendant Hughes replied while matching McNeil's tone, "Alright... but I'm still going through with this until he's inside because I don't have time for this shit and am going to spray you if you start playing any games today!"

41. Sgt. Manners approached the shower area and escorted Plaintiff back in front of cell #F2-120.

42. Inmate McNeil was still inside the cell and began to question plaintiff, "Are you gay? What's your C.M. status... A/C; D/C? Because I'm on D/C status."

43. F.A.C.-33 and F.A.C. 602-36 requires staff to not house D/C. status inmates with A/C status inmates. Each named Defendant is aware of this fact.

44. At that point, Plaintiff stated to Defendant Captain Hughes, "I'm not on D/C status and I'm on my way back to C.M. III where he's saying he's on D/C status and on his way back to I... we're not compatible!"

45. One of the inmates housed in F2-103 or F2-104 across the hall and known as, "Soldier P" yelled to Defendant Hughes, "Damn Cap... you really gonna put that man in there with that check-in bug knowing he on his way back to I for stabbing his bunky and done told you he

gonna do that man the same way... For real Cap.?. You knowing the man reputation Cap.?. Man this shit crazy!"

46. Defendant Hughes and Plaintiff both starred towards the direction of cell# F2-103 or F2-104 acknowledging "Soldier P" protest.

47. Defendant Hughes then starred back at Plaintiff and retorted, "The moving room say y'all compatible... you going in there!"

48. Defendant Hughes then starred Plaintiff up and down while slightly turning his head from side to side in determining if he was sure he was making the right decision of following the inmates advice and not calling the moving room to inform them of the "specific risk of harm posed" for reassigned housing then called for cell# F2-120 to be opened while ordering plaintiff "Go inside" to which he complied.

49. On September _1_, 2021 at approximately 9:30am cell inspection was announced on the wing by the inmate housed in cell# F2-103 or F2-104 and known as, "Soldier P." He yelled, "Cell 20 low... cell inspection about to come in. I see them in the hallway and will stop them to let them know how that bug threatened to stab you yesterday and Hughes still put you in there."

50. Subsequently, other inmates began yelling inquisitively "Cell 20 low... if you need a witness you can call my cell number..." and "Cell 20 low...when they get to my cell I will stop them so that they know dude "high risk" and move you to another cell."

51. Cell inspection is a time when high ranking officials such as, "Warden, Colonel, Major, etc" walk through to ensure inmates housed on C.M. wings have hygiene supplies and are in compliance with the rules. Beds are to be made with a six inch collar while inmates stand under cell lights wearing Class A attire. It is common for inmates to have any problems addressed by them at that time by bringing it to the attention of the official who stops via cellfront.

52. Plaintiff stood to the front of the cell door window the entire time observing while awaiting cell inspection officials to enter the dormitory. Soldier P could see him clearly.

53. As Major Richter and Lieutenant Wheaton approached cell

#F2-103 or F2-104, "Soldier P" began to protest, "That man could've got killed last night. Y'all got him in that cell with that bug known for stabbing his bunkys and told y'all he gonna do that man the same way. The moving room don't even know cause ain't nobody told them nothing."

54. Defendant Richter responded, "What? Killed last night? Who stabbed who? What are you talking about?"

55. Subsequently, Lieutenant Wheaton informed Major Richter, "Let me handle this because I'm familiar with all of my inmates being that I work this dorm regularly." She then inquired to Soldier P, "Now what did you say?"

56. Soldier P then pointed towards cell #F2-120 while yelling, "Everyone knows McNeil is a bug Lt., and he's on his way back to C.M. I for stabbing his last bunky and is supposed to be housed alone. Yesterday, he threatened to stab the man if they put him inside the cell and Hughes still put em in there with him. That's what I'm talking about."

57. Defendants Wheaton and Richter both looked towards cell #F2-120 observing Plaintiff standing at the window while knodding their heads understandingly.

58. At that time, Defendant Wheaton stated to plaintiff, "Is he talking about you" to which Plaintiff nodded his head in confirmation. She then began mumbling while starring quizzically, "McNeil...McNeil." After approximately five seconds she stated, "Ohh McNeil... the little gunner," while smiling.

59. "Gunning" is a term used in prison to describe an inmate actions of intentionally exposing their genitals to officials while masterbating. Defendant Wheaton also knew McNeil for being a "gunner."

60. F.D.O.C. Officials frown upon "gunners" and often retaliate against them by refusing to give them their meals at chow time, place them on property restriction strip cells, gas them, beat them while restrained, and/or pay other inmates to beat or stab them when possible. This information is generally known throughout the penal system and occurs frequently. Each named defendant is aware of this fact.

61. Defendant Richter then stated to Plaintiff, "So you want out

of the cell with the little gunner huh... Well we'll talk to you and address all of your concerns once we make our way around there. He then proceeded doing cell inspection with Defendant Wheaton.

62. As Defendants Richter and Wheaton approached cell #F2-108 Plaintiff could hear Wheaton stating, "We already know about McNeil and his bunky, ya'll don't have to keep telling us about it; worry about yourselves. We will address it once we get to their cell.

63. As Major Richter approached, plaintiff stopped him in front of cell #F2-120 stating, "Sir... this inmate has threatened to stab me like he did his bunky before and he tried to refuse me yesterday but they forced me inside... On top of that, he's on D/C status and I'm A/C on my way to C.M. III... Man I don't feel safe in here; you see I still ain't unpacked my property and slept on the floor by the door last night. Dude say he on his way back to C.M. I; I need to be moved."

64. Plaintiff's mat was still at the cell door and not in compliance with cell inspection rules to express the severity and nature of the situation. His property was not unpacked but sitting on top of the top bunk and was observed clearly by Major Richter.

65. Defendant Major Richter stated, "It don't matter if you on A/C and he's on D/C and if you think otherwise, write it up."

66. Defendant Lieutenant Wheaton stood by listening yet said nothing. She had time to quote any rules which they both had been trained to follow or intervene in the event she chose to.

67. Inmate McNeil approached the cell door to speak with Defendant Major Richter stating, "Sir... I've been having mental health issues and they keep denying me psychological emergencies to get help, I need to be housed alone cause I'm on my way back to C.M. I and he about to go to C.M. III and we not compatible..."

68. Subsequently, Defendant Lieutenant Wheaton interrupted him in mid-sentence stating, "McNeil... stop being a bitch!" She then proceeded to walk away along with Defendant Major Richter.

69. On September 2, 2021 at approximately 6:30pm - 7:30pm officer Barker approached cell#F2-120 for showering. Inmates housed on C.M. are placed in handcuffs behind their back then escorted outside the cells by officials on specific days of the week to the shower area. They are required to be standing under the cell lights in boxer shorts. If that procedure is followed, then the cell door is marked for them to be afforded a shower when their cell number is reached.

70. At that time, Plaintiff placed his hands behind his back to be handcuffed through the food flap for showering. Once handcuffed, he proceeded to stand at the back of the cell facing the wall as required.

71. Inmate McNeil then proceeded to be handcuffed in similar fashion. Once his left wrist was handcuffed, he quickly snatched it back inside the food flap then used it as a weapon to repeatedly strike plaintiff with the handcuff brutally across the left side of his facial, ear, and head area approximately 8-10 times.

72. Chemical agents were applied by officer Barker to de-escalate the coward attack then Plaintiff was placed in a wheelchair and pushed to the triage area to be accessed by a nurse.

73. As a result of the force used with the handcuffs by inmate McNeil, Joseph DC#C09032, plaintiff suffered deep swelling to the left side of his facial cheek bone area and left ear. Minor swelling to the top left forehead, top right forehead, and middle forehead area. Plaintiff also suffered a deep laceration in his left ear area which was split from the inside out, and minor lacerations to the top left, right, and middle forehead area. All which required medical surgerical glue to close.

74. In addition to the force used with handcuffs by inmate McNeil, Joseph DC#C09032 plaintiff suffered "severe pain" from being cowardly attacked, humiliation, anger, panic, trauma, etc. The force used also resulted in disfigurement of his left ear in the form of a "keloid" for approximately six months resulting in permanent scarring.

75. Plaintiff received **IBUPROFEN** for pain suffered including

migraine headaches, and severe earaches as a result of force used with handcuffs by inmate McNeil, Joseph DC#C09032 ongoing.

76. On September 8, 2021 Plaintiff initiated Informal Grievance Log #119-2109-0166 against Defendant's Hughes, Wheaton, and Richter including request to review fixed wing videos and audio on said times and dates then hold for further litigation proceedings in support of his complaint. Said grievance was denied.

77. On September 16, 2021 Plaintiff initiated Formal Grievance Log #2109-119-167 seeking further review with same request. Said grievance was approved with response, "YOUR REQUEST FOR VIDEO RETENTION WILL BE REVIEWED AND SAVED

## V. CLAIMS FOR RELIEF

78. Count One: Failure to Protect Claim Under the Eighth Amendment Prohibition of Cruel and Unusual Punishment Clause Against Defendant Hughes

a) The failure of Defendant Hughes to act on his subjective knowledge of a specific risk posed of serious harm to Plaintiff's future health and safety and/or prevent the placement of Plaintiff in a cell with prisoner known for "unprovoked stabbings of random cell-mates" who threatened to do him the same violated his right to be free from cruel and unusual punishment under the United States Constitution.

b) As a result of Defendant Hughes failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

79. Count Two: Failure to Protect Claim Under the Eighth Amendment Against Defendant Hughes

a) The failure of Defendant Hughes to act on his subjective knowledge of a specific risk of serious harm to Plaintiff and/or prevent

the placement of Plaintiff in a cell with prisoner known for "unprovoked stabbings of random cellmates" who threatened to do him the same created a substantial risk of serious harm to Plaintiff in violation of his right to be free from deliberate indifference to a known risk of harm to future health and safety under the United States Constitution.

b) As a result of Defendant Hughes failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

80. Count Three: Failure to Protect Claim Under the Eighth Amendment Prohibition of Cruel and Unusual Punishment Clause Against Defendant Richter

a) The failure of Defendant Richter to act on his subjective knowledge of a specific risk posed of serious harm to Plaintiff's future health and safety and/or remove Plaintiff from being housed with a prisoner known for "unprovoked stabbings of random cellmates" who threatened to do him the same violated his right to be free from cruel and unusual punishment under the United States Constitution.

b) As a result of Defendant Richter failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

81. Count Four: Failure to Protect Claim Under the Eighth Amendment Against Defendant Richter

a) The failure of Defendant Richter to act on his subjective knowledge of a specific risk of serious harm to Plaintiff and/or remove Plaintiff from being housed with prisoner known for "unprovoked stabbings of random cellmates" who threatened to do him the same created a substantial risk of serious harm to Plaintiff in violation of his right to be free from deliberate indifference to a known risk of harm to his future health and safety under the United States Constitution.

b) As a result of Defendant Richter failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

82. Count Five: Failure to Protect Claim Under the Eighth Amendment Prohibition of Cruel and Unusual Punishment Clause Against Defendant Wheaton

a) The failure of Defendant Wheaton to act on her subjective knowledge of a specific risk posed of serious harm to Plaintiffs future health and safety and/or remove Plaintiff from being housed with a prisoner known for "unprovoked stabbings of random cellmates" who threatened to do him the same violated his right to be free from cruel and unusual punishment under the United States Constitution.

b) As a result of Defendant Wheaton failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

83. Count Six: Failure to Protect Claim Under the Eighth Amendment Against Defendant Wheaton

a) The failure of Defendant Wheaton to act on her subjective knowledge of a specific risk of serious harm to Plaintiff and/or remove Plaintiff from being housed with prisoner known for "unprovoked stabbings of random cellmates" who threatened to do him the same created a substantial risk of serious harm to Plaintiff in violation of his right to be free from deliberate indifference to a known risk of harm to his future health and safety under the United States Constitution.

## VI RELIEF REQUESTED

WHEREFORE, Plaintiff request that this Court grant the following relief:

1. COMPENSATORY DAMAGES against each defendant jointly and/or severally in their individual capacity.

2. PUNITIVE DAMAGES against each defendant jointly and/or severally in their individual capacity.

3. The cost of litigation in this suit and Attorney fees in the event Counsel is appointed.

4. Jury trial demanded.

5. Any other relief this court may deem appropriate, suitable, and just including but not limited to NOMINAL DAMAGES against each defendant.

Against Defendant Wheaton,
    See Complaint at 7 ¶¶ 25-30, and 8 ¶¶ 31, 32, 33, 34, 36, 37, and 38
        a) The actions of defendant Wheaton in hearing threats of future harm, or having notice of such, made by another inmate and failing to act on her knowledge of a substantial risk of serious harm to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safety under the United States Constitution.
        b) As a result of Defendant Wheatons' failure, Plaintiff was viciously assaulted and received serious physical and emotional injuries.

## VI. RELIEF REQUESTED

        WHEREFORE, Plaintiff request that this Court grant the following relief:
        1. COMPENSATORY DAMAGES against each defendant jointly and/or severally in their individual capacity.
        2. PUNITIVE DAMAGES against each defendant jointly and/or severally in their individual capacity.
        3. The cost of litigation in this suit and Attorney fees in the event Counsel is appointed.
        4. Jury trial demanded.
        5. Any other relief this court may deem appropriate, suitable, and just including but not limited to NOMINAL DAMAGES against each defendant.

## VII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies (*grievance procedures*) before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action. *Plaintiff has exhausted all Institutional and Central Office Remedies*

## VIII.   PRIOR LITIGATION

*This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.*

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while*

*incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."* 28 U.S.C. § 1915(g).

A.  Have you had any case in federal court, including federal appellate court, dismissed as frivolous, as malicious, for failure to state a claim, or prior to service?

Unsure of How To Answer Due To The Following:

☑ YES   ☐ NO

If "Yes," identify the case number, date of dismissal, and court for each case:

1.  Date: _Approx. 8-13-18_   Case #: _3:15-cv-907-J-32JRK_

    Court: _U.S. District Court • Middle District of Florida_

    Reason: _Remainder of case proceeded but sexual harassment claim dismissed; frivolous_

2.  Date: _Approx. 4-18-19_   Case #: _19-25144-cv-SCOLA_

    Court: _U.S. District Court • Southern District of Florida_

    Reason: _Remainder of case proceeded but assault and battery claim dismissed_

3.  Date: _N/A_   Case #: _N/A_

    Court: _N/A_

    Reason: _N/A_

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits or appeals in **state or federal court** dealing with the same facts or issue involved in this case?

☐ YES ☑ NO

If "Yes," identify the case number, parties, date filed, result (*if not still pending*), name of judge, and court for each case (*if more than one*):

1. Case #:___N/A___Parties: ___N/A_____

   Court:___N/A_____Judge: ___N/A_____

   Date Filed:_N/A___Dismissal Date (*if not pending*): ___N/A___

   Reason: ___N/A_____

2. Case #:___N/A___Parties: ___N/A_____

   Court:___N/A_____Judge: ___N/A_____

   Date Filed:_N/A___Dismissal Date (*if not pending*): ___N/A___

   Reason: ___N/A_____

*(If necessary, list additional cases on an attached page)*

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in **state or federal court** either challenging your conviction or relating to the conditions of your confinement?.

☑ YES ☐ NO

If "Yes," identify all lawsuits, petitions and appeals:

NDFL Pro Se 14 (Revised June 2022) Civil Rights Complaint Prisoner
ClerkAdmin/Official/Forms

10

1. Case #: *3/5-cv-907-J-32JRK* Parties: *C. Hayes, et al*

   Court: *Middle District of Florida*    Judge: *Klindt*

   Date Filed: *Approx 7-21-15* Dismissal Date (*if not pending*): *Appor. 10-31-18*

   Reason: *Settled*

2. Case #: *18-25144-CV-SCOLA* Parties: *P. Lebowitz, et al*

   Court: *Southern District of Florida*    Judge: *Scola*

   Date Filed: *Approx 12-20-18* Dismissal Date (*if not pending*): *Appox 2-21-21*

   Reason: *Settled*

3. Case #: *3:23-cv-5086/LAY/ZCB* Parties: *S. May, et al.*

   Court: *Northern District of Florida*    Judge: *Bolitho*

   Date Filed: *1-19-23*    Dismissal Date (*if not pending*): *8-14-24*

   Reason: *Settled*

4. Case #: *2008-CF-3467-AXXX* Parties: *State of Florida*

   Court: *Duval County / First District Court*    Judge: *Unsure*

   Date Filed: *Approx 6-3-09*    Dismissal Date (*if not pending*): *Approx 7-30-10*

   Reason: *Affirmed - Per Curiam Affirmed*

5. Case #: *1D13-2418*    Parties: *State of Florida*

   Court: *First District Court of Appeals*    Judge: *Unsure*

   Date Filed: *Approx. 5-22-13* Dismissal Date (*if not pending*): *Approx 9-11-13*

   Reason: *Affirmed - Per Curiam Affirmed*

6. Case #: *1017-3877*    Parties: *State of Florida*

Court: *First District Court of Appeals* Judge: *Unsure*

Date Filed: *9-20-17 (Appx)* Dismissal Date (*if not pending*): *Appx. 2-10-2020*

Reason: *Affirmed-Per Curiam Affirmed*

*(Attach additional pages as necessary to list all cases.)*

## IX. CERTIFICATION

1. I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct.

2. Additionally, as required by Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non- frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

3. I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: 7-9-25  Plaintiff's Signature: _____

Printed Name of Plaintiff: KENNETH FOAD DC#167315

Correctional Institution: BLACKWATER RIVER CORRECTIONAL FACILITY

Address: 5914 JEFF ATES ROAD • MILTON, FLORIDA 32583

**I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☑ delivered to prison officials for mailing or ☐ deposited in the prison's mail system for mailing on the 9th day of July, 2025.**

Signature of Incarcerated Plaintiff: _____

STATE OF FLORIDA
COUNTY OF Santa Rosa

On this 9 day of July, 2025, I attest that the preceding or attached document is true, exact, complete, and unaltered. If a printout, I further attest that, at the time of printing, no security features, if any, present on the electronic record indicated that the record had been altered since execution.



CYNTHIA M. BULLOCK
MY COMMISSION # HH 604342
EXPIRES: October 20, 2028

_____
(Signature of Notary Public-State of Florida)

Cynthia M. Bullock
(Print, Type, or Stamp Commissioned Name of Notary Public)

ATTACHED CASE HISTORY:

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in **state or federal court** either challenging your conviction or relating to the conditions of your confinement?.

7. Case #: 1D17-3902             Parties: State of Florida
Court: First District Court of Appeals  Judge: Unsure
Date filed: 9-22-17 (Approx.)    Dismissal Date (if not pending): 11-29-17
Reason: No Filing Fee

(14)

KENNETH FORD DC#1675/5
BLACKWATER RIVER CORR. FACILITY
5914 JEFF ATES ROAD
MILTON, FLORIDA 32583



US POSTAGE
quadient
CORRECTION
IMI
$001.13
07/10/2025 ZIP 32583
043M31258278

UNITED STATES DISTRICT COURT
1 NORTH PALAFOX STREET
PENSACOLA, FLORIDA 32502

JUL 15 2025