UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH WARREN FORD,

       Plaintiff,

vs.                                                    Case No.: 3:24cv00570-LC-ZCB

CPT. CHRISTOPHER HUGHES, LT.
CHRISTY WHEATON, AND MAJOR
CHARLES RICHTER.

       Defendants

_____

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendants Cpt. Christopher Hughes ("Hughes"), Lt.

Christy Wheaton ("Wheaton"), and Major Richter ("Richter"), (collectively

"Defendants"), through undersigned counsel, and hereby respectfully move the

Court to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6) of the

Federal Rules of Civil Procedure. As discussed in this motion and the incorporated

Memorandum of Law, all Plaintiff's claims against Defendants are due to be

dismissed on the following grounds:

1. Plaintiff, *pro se*, and currently incarcerated at South Bay Correctional

Facility serving a life sentence for first degree murder,[1] filed this case pursuant to

42 U.S.C. § 1983 concerning alleged events from August 31, 2021 through

September 2, 2021 (over 4 years ago) at the Santa Rosa Correctional Institution

(SRCI).

2.  The operative complaint, Plaintiff's Second Amended Complaint (Doc.

40) ("Complaint"), asserts six claims stemming from an incident in which Plaintiff

was allegedly injured by his cell mate at SRCI on September 2, 2021.

3.  These six claims are set forth as follows:

Count I and II: Failure to protect under the Eighth Amendment against
Hughes and for deliberate indifference.

Count III and IV: Failure to protect under the Eighth Amendment against
Richter and for deliberate indifference.

Count V and VI: Failure to protect under the Eighth Amendment against
Wheaton and for deliberate indifference.

4.  The relief requested includes compensatory damages against each

defendant jointly and/or severally in their individual capacity; punitive damages

against each Defendant jointly and/or severally in their individual capacity; costs

of litigation and attorneys fees; and any other relief this court may deem

---

[1]See the Florida Department of Corrections Inmate Search website, last visited 11.11.25:
https://pubapps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=167315&TypeSearch=AI

appropriate.

5. Defendants move to dismiss the Plaintiff's Complaint on the grounds that the Plaintiff's allegations do not rise to the level of a constitutional violation and therefore failed to state a cause of action.

6. Defendants move to dismiss the Plaintiff's Complaint because each one of them are entitled to qualified immunity.

7. Defendants assert that Plaintiff's request for punitive damages is improper and should be dismissed.

8. In support hereof, Defendants rely on their incorporated Memorandum of Law.

WHEREFORE, Defendants hereby respectfully request that the claim(s) against them be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**MEMORANDUM OF LAW**

**I.    ALLEGATIONS**

Plaintiff's allegations fall into six categories: allegations against all Defendants, additional allegations against Hughes, supplemental allegations directed solely at Richter and Wheaton, further allegations exclusively against Richter, more allegations exclusively against Wheaton, and general allegations

that are not specifically attributed to any Defendant.

## A.    Allegations Against All Defendants

All defendants are aware that inmates returning from Close Management (CM) II or CM III to CM I often experience anger, depression, and hostility, leading to management problems (Doc. 40, ¶ IV. 3).[2] At Santa Rosa Correctional Institution ( SRCI), the CM Unit faces high rates of inmate-on-inmate violence, including murders and stabbings (Doc. 40, ¶ 4). Defendants know that the Florida Department of Corrections (FDC) has implemented measures to reduce such risks, requiring staff to investigate, monitor, and mitigate threats outlined in F.A.C. -33 and F.A.C. - 602-36[3] (Doc. 40, ¶ 5). Each defendant has been trained on the dangers of housing inmates with others who pose a specific risk, such as McNeil, who is known for unprovoked attacks on cell mates (Doc. 40, ¶ 6). Defendants were aware of McNeil's reputation of unprovoked stabbings on his cell mates and the specific risk of harm he posed to other inmates because they have unique skills of correctional officers (Doc. 40, ¶ 20).

---

[2]All citations to the Plaintiff's Second Amended Complaint are in Section IV "STATEMENT OF FACTS," unless otherwise noted. All further citations to Section IV. of the Plaintiff's Second Amended Complaint will be made by referring to the complaint's docket number, followed by the appropriate paragraph number in Section IV (i.e., "Doc. 40, ¶ 1").

[3]While Plaintiff alleged this is a section in the Florida Administrative Code, there is no Florida Administrative Code designated 602-36 in Chapter 33, or otherwise.

**B.      Allegations Against Hughes**

On August 31, 2021, two correctional officers at SRCI, knowing of McNeil's violent reputation, called Hughes when Plaintiff was assigned to F-Dorm and was to share a cell with McNeil (Doc. 40 ¶¶ 1, 21). Hughes, working on paperwork, walked to McNeil's cell, stating he refused to tolerate any trouble that day (Doc. 40, ¶ 22). Plaintiff saw and heard Hughes being taunted by the other inmates regarding  McNeil's violent history, warning Hughes that additional paperwork and a move was necessary likely due to McNeil's behavior (Doc. 40, ¶ 23). McNeil while starring at Hughes threatened to harm Plaintiff if Plaintiff was placed in his cell, stating he was on his way back to CM I and there will be problems if he has to share a cell with Plaintiff (Doc. 40, ¶ 24). Inmates in other cells warned Hughes not to house Plaintiff with McNeil, citing McNeil's violent past and incompatibility (Doc. 40, ¶ 25). Hughes heard the inmates and told McNeil Plaintiff was moving in his cell (Doc. 40, ¶ 26). McNeil threatened again stating, "I will stab him like I did my bunky before if you put him in here with me!" (Doc. 40, ¶ 27). The other inmates told Hughes he needed to move Plaintiff to somewhere else, encouraged Hughes "to not follow the rules," and told Hughes to put Plaintiff in the cell with McNeil (Doc. 40, ¶ 28). Hughes nodded in agreement (Doc. 40, ¶ 29). McNeil looked Plaintiff and McNeil up and down

sizing them up (Doc. 40, ¶ 30). McNeil gave Hughes copies of McNeil's disciplinary reports he received for stabbing his cell mates in the past, while telling Hughes to find Plaintiff a different cell (Doc. 40, ¶ 31). Hughes read McNeil's disciplinary reports (Doc. 40, ¶ 32). After reading McNeil's disciplinary reports, and after knowing McNeil made a threat to Plaintiff, and knowing FDC's rules, Hughes said, I don't have time for this, I'm getting the gas and camera so I can spray McNeil for refusing Plaintiff and then afterwards Plaintiff is still coming inside the cell (Doc. 40, ¶ 33). Hughes knew he should have called the moving room to inform them of McNeil's threats (Doc. 40, ¶ 35). After Hughes ordered McNeil to be gassed,  McNeil agreed to allow Plaintiff into the cell (Doc. 40, ¶ 39-40). Plaintiff then told Hughes "I'm not on D/C status and I'm on my way back to C.M. III where he's saying he's on D/C status and on his way back to I. . . were not compatible!" (Doc. 40, ¶ 44). Hughes looked at Plaintiff and said, "the moving room say ya'll compatible. . . you going in there!" (Doc. 40, ¶ 47). Hughes then ordered Plaintiff to go inside the same cell with McNeil, and Plaintiff complied (Doc. 40, ¶ 48).

C.    **Additional Allegations against Richter and Wheaton, Collectively**

The next day, on September 1, 2021, Richter and Wheaton entered F-Dorm and were taunted by some of the same inmates that heckled Hughes on August 31,

2021, telling them McNeil was known for stabbing his cell mates, Plaintiff could have gotten killed already, and no one had told the moving room about McNeil (Doc. 40, ¶ 53). A different inmate told Richter and Wheaton that McNeil was on his way back to CM I for stabbing his last cell mate and is supposed to be housed alone (Doc. 40, ¶ 56). Wheaton told McNeil to "stop being a bitch!" and walked away with Richter  (Doc. 40, ¶ 68).

## D.    Additional allegations against Richter

On September 1, 2021, while walking around the cells in F-Dorm, Richter asked the inmates who got killed last night, and what are you talking about, when they heckled him about McNeil's prior bad behavior  (Doc. 40, ¶ 54). Plaintiff told Richter that McNeil had threatened to stab Plaintiff like McNeil claimed he did to his previous cell mate  (Doc. 40, ¶ 63). Plaintiff also told Richter that McNeil was on D/C status and Plaintiff was on A/C on his way to CM III, McNeil was on his way back to CM I, that Plaintiff did not feel safe in the same cell with McNeil and wanted to be moved (Doc. 40, ¶ 63). In response, Richter told Plaintiff it did not matter if Plaintiff was on A/C and McNeil was on D/C and if Plaintiff disagreed to "write it up" (Doc. 40, ¶ 65). McNeil told Richter he had been having mental health issues and no one would help him, he wanted to be housed alone, he was on his way to CM I, Plaintiff was moving to CM III, and he was not compatible with

Plaintiff (Doc. 40, ¶ 67).

**E.    Additional allegations against Wheaton**

Wheaton told Richter she worked F-Dorm regularly and asked the inmate, Soldier

P, what he was talking about (Doc. 40, ¶ 55). Wheaton asked Plaintiff if Soldier P

was referring to Plaintiff, Plaintiff confirmed that he was, then Wheaton stated,

"McNeil, McNeil. . . the little gunner" (Doc. 40, ¶ 58-59). Wheaton listened while

Richter told Plaintiff that he doesn't matter if A/C and D/C share the same cell

(Doc. 40, ¶ 66).

**F.    General Allegations**

CM separates inmates from the general population for security based on the

inmate's behavior, CM I is the most restrictive single cell housing level and CM

III is the least restrictive housing of the three levels. (Doc. 40, ¶ 2). Prior to

placing inmates in the same cell, inmates are to be reviewed by the housing

supervisor to determine if they are a threat to their cell mate under Florida

Administrative Codes 33 and 602-36[4] (Doc. 40, ¶ 7). Three hours passed between

the time Plaintiff was originally placed in cell F2-205 to F2-120 "to be housed

with inmate McNeil (Doc. 40, ¶¶ 1, 15-16). The "moving" room at SRCI

---

[4]While Plaintiff alleged this is a section in the Florida Administrative Code, there is no
Florida Administrative Code designated 602-36 in Chapter 33, or otherwise.

determined that Plaintiff and McNeil were compatible to share a cell (Doc. 40, ¶ 47). McNeil's referral to CM was for "a pattern of predatory actions which makes an inmate a threat to others" and received additional disciplinary reports (Doc. 40, ¶ 17-18). McNeil asked Plaintiff while he was standing outside of their cell if he was gay, his CM status, and whether he was A/C or D/C (Doc. 40, ¶ 42).

On September 2, 2021, McNeil was handcuffed for the shower in his shared cell with Plaintiff (Doc. 40, ¶ 71). After being handcuffed, McNeil used the handcuffs to hit plaintiff in the head repeatedly, causing injury (Doc. 40, ¶ 71, 73-74). Plaintiff filed a grievance on September 8, 2021 (denied) and September 16, 2021 (granted) seeking permission to look at the videos and audio in F-Dorm where the attack occurred (Doc. 40, ¶ 76-77).

None of the Defendants being sued in this lawsuit were present at the time Plaintiff was attacked on September 2, 2021 (Doc. 40, *generally*). On that date McNeil was handcuffed by a correctional officer that is not a party to the lawsuit (Doc. 40, ¶ 70-71). McNeil jerked away from the correctional officer and hit Plaintiff on the head with the handcuffs on McNeil's wrist (Doc. 40, ¶ 71). A correctional officer not a party to the lawsuit intervened stopping the attack (Doc. 40, ¶ 72). Plaintiff suffered all of his injuries on September 2, 2025 (Doc. 40, ¶ 69-73).

Plaintiff does not explicitly allege the CM level he and McNeil were assigned when they were cell mates (Doc. 40, *generally*). However, applying deductive reasoning Plaintiff inadvertently admitted that he was not on the least restrictive level- CM III (Doc. 40, ¶¶ 44, 56, 63, and *generally*). Using deductive reasoning Plaintiff also admitted that McNeil was not on CM I - the most restrictive level (Doc. 40, ¶¶ 44, 56, 63 *generally*). Between the time Plaintiff was placed in cell August 31, 2021 and the time of the attack on September 2, 2021, there were no incidents between Plaintiff and McNeil (Doc. 40, *generally*). There is no allegation that McNeil was in possession or had access to a weapon to stab Plaintiff and carry out his threats (Doc. 40, *generally*). McNeil did not tell Richter or Wheaton that he was going to attack Plaintiff, and there is no allegation that Richter and Wheaton had any knowledge of the events that allegedly took place on August 31, 2021 (Doc. 40, *generally*).

At first glance what the Plaintiff has claimed, in volume and detail, appears his allegations rise to the level of a constitutional violation. However, upon applying the substantive relevant facts against the standards courts apply in failure to protect and deliberate indifference cases, it becomes apparent the Plaintiff's allegations do not rise to the level of a constitutional violation.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS AND QUALIFIED IMMUNITY

For purposes of a motion to dismiss, all well-pled allegations in the complaint are accepted as true. *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009). "In order to survive a motion to dismiss, a complaint must contain sufficient matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citation omitted). A complaint that merely pleads facts consistent with liability does not meet the plausibility standard. *Iqbal*, 556 U.S. at 678. Conclusionary factual allegations, unwarranted deductions, claims that are internally inconsistent or can be disproven by facts of which the court can take judicial notice and legal conclusions are not accepted as true for the purposes of a motion to dismiss. *Ellen S. v. Fla. Bd. Of Bar Examiners*, 859 F.Supp. 1489, 1492 (S.D. Fla. 1994). (citations omitted)

The language of 42 U.S.C. § 1983 plainly "requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005). (citation omitted) Further, a compliant must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). "One cannot be held liable for the actions and/or inactions of others, but can only be held responsible if he participated in the deprivation of Plaintiff's constitutional rights or directed such action and/or omission that resulted in such deprivation." *Schebel v. Charlotte County*, 833 F. Supp. 889, 891 (M.D. Fla. 1993).

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The U.S. Supreme Court has set forth the following regarding clearly established law:

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that **every** 'reasonable official would understand that what he is doing'" is unlawful. [*Ashcroft v.*] *al-Kidd*, [563 U.S. 731,] 741 [(2011)] (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *al-Kidd*, *supra*, at 741. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. . . The precedent must be clear enough that **every** reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he **confronted**." *Saucier*, 533 U.S. at 202.
>
> This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam). We have repeatedly stressed that courts must **not** "define clearly established law **at a high level of generality**, since doing so avoids the crucial question whether the official acted reasonably **in the particular circumstances** that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted).

*Wesby*, 583 U.S. at 62-64 (emphasis added). Thus, qualified immunity protects all except "'the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). Therefore, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## III.    LEGAL ARGUMENT

## THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S SECTION 1983 CLAIMS AGAINST THE DEFENDANTS

The Defendants bear the burden of pleading the affirmative defense of qualified immunity and showing each of them, individually, acted within their respective discretionary authority. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). Once each individual Defendant shows they each operated within their respective discretionary authority, the burden then shifts to the Plaintiff, who must show (and plead) that the public official violated a right so clearly established that "a reasonable person would have known." *Quiles v. City of Tampa Police Dep't*, 596 Fed. Appx. 816, 818 (11th Cir 2015). (citation omitted) If the plaintiff fails to carry this burden, qualified immunity applies, and the public official is immune from the plaintiff's suit. Through the analysis, it must be kept in mind that "qualified immunity for government officials is the **rule**, [and] liability and trial for liability the **exception**." *Alexander v. Univ. of N. Fla.*, 39 F.3d 290, 291 (11th Cir. 1994) (quoting *Lassiter v. Alabama A& M University*, 28 F.3d 1146 (11th Cir. 1994) (emphasis added). Hughes, Wheaton, and Richter were acting within the scope of their discretionary authority and within their duties when they interacted with Plaintiff (Doc. 40, *generally*); *Johnson v. Fee*, 836 F. App'x 394,

Page 14 of  38

398 (11th Cir. 2020).

## THE ALLEGED CONDUCT OF HUGHES, WHEATON, AND RICHTER DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

Because the Defendants, individually, as alleged by Plaintiff, acted within their respective roles as State employees, the burden shifts to the Plaintiff to demonstrate that each one of them individually violated Plaintiff's constitutional rights. *Quiles v. City of Tampa,* 596 Fed. Appx. at 818. Plaintiff cannot meet this burden. To do so, Plaintiff must first show or plead that Hughes, Wheaton, or Richter's conduct individually violated a constitutionally protected right. Second, Plaintiff must demonstrate that the alleged misconduct violated a clearly established constitutional right. *District of Columbia v. Wesby, 583 U.S. at 63; Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010). A plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity. *Grider*, 618 F.3d at 1254. As explained below, Plaintiff fails to clear either hurdle.

## PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO PROTECT AND FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE

Plaintiff fails to plausibly allege facts supporting his claims of a constitutional violation. A "prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). His constitutional duty is to ensure the "reasonable safety" of

inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions. *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994). That is why not "every injury suffered by one inmate at the hands of another. . . translates into a constitutional liability for prison officials responsible for the victim's safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam) (internal quotation marks and citations omitted).

To establish an Eighth Amendment failure to protect or deliberate indifference claim against the Defendants, Plaintiff must have alleged evidence of: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the alleged Eighth Amendment violation. *Cox v. Nobles*, 15 F.4th 1350, 1357-1358 (11th Cir. 2021). The official's acts or omissions must be "the cause – not merely a contributing factor" of the violation or injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).

Courts use an objective standard to determine whether a plaintiff alleged facts sufficient to show the first element - a substantial risk of serious harm. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to

his future health or safety." *Marbury v. Warden*, 936 F.3d at 1233 (citation omitted). A plaintiff can proceed under a "general threat" theory or by an individualized risk based on a specific threat to the prisoner. *Marbury*, 936 F.3d at 1233, 1235. In the case *sub judice*, Plaintiff proceeds under a specific risk theory based on an inmate who threatened him (Doc. 40 ¶¶ 78-83).

"To establish a deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020 (citing *Farmer v. Brennan*, 511 U.S. at 834). The Eleventh Circuit Court of Appeals (Eleventh Circuit) recently clarified the standard for plaintiffs to demonstrate a deliberate-indifference claim. *See Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). To make out a claim for deliberate indifference arising from an inmate assault, a plaintiff must allege (1) "that he suffered a deprivation that was, 'objectively, sufficiently serious,'" (2) "that the defendant acted with 'subjective recklessness as used in the criminal law,'" – meaning a showing that the defendant was "actually, subjectively aware that his own conduct [his own acts or omissions] caused a substantial risk of serious harm to the plaintiff" and (3) "that even if the defendant 'actually knew of a substantial risk to inmate health and safety,' he 'cannot be found liable under the Cruel and Unusual Punishment Clause' if he 'responded reasonably to the risk.'" *Wade v. McDade*, 106 F.4th at

1262 (quoting *Farmer*, 511 U.S. at 834, 844-45). Thus, a defendant's failure to alleviate a risk "that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (quoting *Farmer*, 511 U.S. at 838).

Further, part of the analysis includes a requirement demonstrating that the defendant was subjectively aware that his own conduct - rather than some preexisting risk - put the plaintiff at substantial risk of serious harm. See *id.*, at 1258-1261. As importantly, "[a] general awareness of an inmate's propensity for being violent does not satisfy the subjective awareness requirement." *Oliver, 587 F.App'x 618,* 620 (11ᵗʰ Cir. 2014) (citing *Carter v. Galloway*, 352 F.3d 1346, 1350 (11ᵗʰ Cir. 2003)).

Plaintiff fails to plausibly allege a failure to protect and deliberate indifference claim against the Defendants as set forth in Counts I through VI of Plaintiff's Complaint. Deliberate indifference, as one can see in *Wade*, and *Farmer*, sets a high bar. In establishing the subjective showing, "[a] plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" *Wade*, 106 F.4ᵗʰ at 1262 (quoting *Farmer* 511 U.S. at 834 (1994). This culpable state of mind exceeds ordinary negligence and "is in fact akin to 'subjective recklessness as used in the **criminal** law.'" *Id.* at 1288 (quoting *Farmer*, 51 U.S. at 839-40)

(emphasis added).

To be deliberately indifferent, the Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834-838; *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "**draw that inference**." *Farmer*, 511 U.S. at 837; *Carter v. Galloway*, 352 F.3d at 1349. (emphasis added) A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

"The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). A court's consideration of whether there was a strong likelihood of an injury occurring cannot be based on "hindsight bias."

*Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015).  And, "not. . .every injury suffered by one inmate at the hand of another. . . translates into a constitutional liability for prison officials." *Carter*, 352 F.3d at 1349. In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendant has knowledge of this substantial risk of harm and with this knowledge consciously disregards the risk or fails to respond reasonably. *Farmer*, 511 U.S. at 837.

## PLAINTIFF FAILED TO ALLEGE FACTS SUFFICIENT TO SHOW A SUBSTANTIAL RISK OF SERIOUS INJURY

The majority of Plaintiff's general allegations against all Defendants are nothing more than conclusionary factual allegations. And conclusory factual allegations and unwarranted deductions are not accepted as true for the purposes of a motion to dismiss.  *Ellen v. Fla.*, 859 F. Supp. at 1492.

Pursuant to *Marbury*, Plaintiff must show that the conditions he was placed in were **extreme** and posed an unreasonable risk of serious injury. 936 F.3d at 1233. (emphasis added) Further, Plaintiff must show more than "[a] general awareness of an inmate's propensity for being violent." *Oliver*, 587 F.App'x at 620 (citing *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003)). Not every injury suffered by one inmate at the hands of another translates to a constitutional

liability for prison officials responsible for the victim's safety." *Carter*, 352 F.3d at 1349. And a correctional officer's deviation from policy, even if grossly unreasonable, does not relieve the plaintiff of alleging facts showing that the defendant(s) were objectively aware of a substantial risk of harm to the plaintiff. See *Goodman v Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013).

Plaintiff's allegations do not present objective facts showing he faced a substantial risk of serious injury or was exposed to **extreme** conditions that would pose an unreasonable risk of serious injury. Plaintiff did not allege that McNeil had a knife or other weapon or access to a weapon to stab him and carry out any threat made against him. Plaintiff did not allege that any of the Defendants were aware that McNeil had a knife or other weapon or access to a weapon to carry out a threat to stab Plaintiff. This is significant because McNeil's specific threat directed at Plaintiff was that he was going to stab Plaintiff. Plaintiff states the injury occurred on September 2, 2021 when none of the defendants were present after a correctional officer (not a party to the lawsuit) handcuffed McNeil which was a routine procedure when inmates wish to shower. Handcuffing inmates in order to transfer them to a shower is not an "**extreme**" condition that exposed Plaintiff to "an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d at 1233.

Hughes heard McNeil's threat directed at Plaintiff. But, Hughes understood that the team responsible for making decisions on Plaintiff's housing assignment had made a decision on the same day to place Plaintiff into the same cell as McNeil, indicating no substantial risk of harm was identified. We know this because Hughes told Plaintiff "moving" determined Plaintiff was compatible to share a cell with McNeil.  Plaintiff does not allege that this procedure was ignored. Therefore, Hughes had a reasonable objective belief that Plaintiff would not face any danger by sharing a cell with McNeil, as the "moving" room's decision to place Plaintiff and McNeil in the same cell implied the move was considered safe. Objectively, these facts do now show Plaintiff was exposed to a substantial risk of serious injury.

While Plaintiff claims all Defendants knew of McNeil's violent history and references general risks associated with close management inmates, his statements are conclusory. These assertions do not sufficiently demonstrate a substantial risk of serious injury. Although McNeil's reluctance to have a roommate may suggest a general risk, precedent indicates this alone does not establish a strong likelihood of harm, only a "mere possibility" of harm. *Brown*, 894 F.2d at 1537.

Plaintiff does not allege that Richter and Wheaton had direct knowledge of the statements and events that took place on August 31, 2021.  Plaintiff states that

the other inmates told Richter and Wheaton about some, but not all of the events

on August 31, 2021, but respectfully, the other inmates are not credible sources.

Finally, on September 1, 2021, when Richter and Wheaton toured F-Dorm

where Plaintiff was sharing a cell with McNeil, Plaintiff had failed to follow the

required procedures outlined in Florida Administrative Code Chapters 33-602.220

and 33-602.221(2)(b) for inmates in close management seeking protection.  This is

relevant only to demonstrate that, objectively, Plaintiff was not exposed to a

substantial risk of harm or an extreme risk of substantial risk. According to these

rules, an inmate in close management, like Plaintiff, must submit a signed written

statement expressing fear for their safety and stating that no reasonable

alternatives exist. Rules 33-602.221(2)(b) and 33-602.220(3)(c), Fla. Adm. Code.

(F.A.C.) (2021) This triggers an investigation by the Institutional Classification

Team (ICT), which includes the warden, classification supervisor, and chief of

security. Rule 33-602.220(1)(f), F.A.C. The ICT is also responsible for making

"housing, and inmate status decisions at an institution or facility and for making

other classification recommendations to the [SCO]." *Id.* The ICT reviews the

request and, if necessary, refers it to the State Classification Office (SCO) for a

final decision on protective management and housing. 33-602.220(3)(c)5., F.A.C.

In this case, Plaintiff does not allege that he submitted the required paperwork for

protection while in CM. Plaintiff verbally told Richter about feeling unsafe and McNeil threatened him on September 1, 2021 - the day after McNeil made his stabbing threat. Plaintiff had time to submit a written request for protective management, but chose not to do so.  Objectively, it may reasonably be inferred that in the absence of a written request for protective management, Plaintiff was not at a substantial risk of harm.  Consequently, it is also objectively reasonable that Richter and Wheaton, did not perceive a substantial risk of harm and would not have subjectively perceived one either, since Plaintiff had not submitted a request for protective management.

### PLAINTIFF FAILED TO ALLEGE FACTS SUFFICIENT TO SHOW ANY OF THE DEFENDANTS ACTED WITH SUBJECTIVE RECKLESSNESS AS USED IN THE CRIMINAL LAW

In the event the court determines that a substantial risk of serious harm existed, Plaintiff is unable to demonstrate that any of the Defendants was or were "actually, subjectively aware that his [or her] own conduct caused a substantial risk of serious harm to the [Plaintiff]. *Wade v. McDade*, 106 F.4th at 1262 (*quoting Farmer*, 511 U.S. at 834, 844-45). Stated another way, a defendant "must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, **and he must also draw the inference**." *Farmer*, 511 U.S. at 837.  (emphasis added) "The known risk of an injury must be 'a strong

likelihood, rather than mere possibility,' before a [correctional officer's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d at 1537.

Plaintiff's own version of the incident does not support a reasonable inference that any of the Defendants were "actually, subjectively aware" that Plaintiff's safety was at substantial risk. In response to McNeil's conduct and remarks, and Plaintiff's statements on August 31, 2021, Hughes explained he was placing Plaintiff in the same cell with McNeil because "moving [housing]" determined they were compatible very close in time before placing Plaintiff in the same cell with McNeil - that is what Hughes subjectively believed. There are no allegations to controvert this. Hughes did not draw an inference, based upon the Plaintiff's own assertions. Plaintiff's allegations do not support or reasonably suggest that Hughes knowingly was "actually subjectively aware" that he put Plaintiff's safety at substantial risk.

Likewise, on September 2, 2021, Plaintiff and McNeil's statements to Richter do not support a reasonable inference that Richter or Wheaton were "actually, subjectively aware" that  Plaintiff's safety was at risk. Richter's comment in response to Plaintiff's plea to not share a cell with McNeil was that it did not matter if cell mates had an A/C or D/C status and if Plaintiff disagreed with that statement, then "write it up." That is what Richter subjectively believed

at the time, according to Plaintiff's Complaint. Richter also did not draw an inference.

Because Plaintiff has failed to allege the requisite subjective knowledge, and failed to allege facts sufficient to plausibly suggest that the Defendants drew an inference, Plaintiff has failed to allege essential elements of an Eighth Amendment claim. See *Wade*, 106 F.4th at 1262. More importantly, the facts Plaintiff did allege established the opposite: the Defendants were not "actually, subjectively aware" of any substantial risk and did not draw an inference.

### THE DEFENDANTS RESPONDED REASONABLY TO THE RISK

In the event the court determines the Defendants were "subjectively aware," and "drew the inference," Plaintiff's allegations demonstrate the Defendants "responded reasonably." *Wade*, 106 F. 4th at 1253 (alteration in original) (*quoting Farmer*, 511 U.S. at 844). Hughes and Richter both responded "reasonably" to Plaintiff and McNeil's statements. Plaintiff does not allege Wheaton heard Plaintiff tell Richter that McNeil threatened to stab him. Hughes explained to Plaintiff that he was relying on the "moving" people that make housing and cell mate assignments at SRCI. Richter responded that he believed the A/C D/C status of Plaintiff and McNeil was not relevant, and even suggested that if the Plaintiff did not agree to "write it up." Plaintiff could have filed a grievance airing his

complaints about his housing assignment and his objections to McNeil being his cell mate prior to the September 2, 2021 assault, but he failed to do so. Plaintiff could have requested closed management by following the appropriate procedure to do so, but he failed to do so. The relevant point here is that filing a grievance or submitting a written request for protective custody is the normal course for inmates seeking relief from prison conditions. Richter's response to Plaintiff to "write it up" and file a grievance or submit a "**signed written statement** alleging that [Plaintiff] fears for his or her safety from [McNeil], and that [Plaintiff] feels there is no other reasonable alternative open to him or her." Subsection 33-602.220(3)( c) (emphasis added).

Plaintiff seems to intimate that he was not supposed to be McNeil's cell mate because Plaintiff was on A/C status while McNeil was on D.C. status. However, a "jail officials' deviation form policy or protocol, even if grossly unreasonable, does not relieve the plaintiff of the burden of showing that the defendants were objectively aware of a substantial risk of harm to the plaintiff. *See Goodman v. Kimbrough*, 718 F.3d at 1334.

Applying deductive reasoning Plaintiff alleges both he and McNeil were not designated in CM III - the least restrictive. Prisoners in the same close management program are allowed to be housed together, housing assignments are

well within the authority of the prisons, and "[p]rison administrators . . . should be accorded wide-ranging deference. . . to preserve internal order and discipline and to maintain institutional security," (*Bell v. Wolfish*, 441 U.S. 520, 547 (1979)), the means of which "are peculiarly within the province and professional expertise of corrections officials. . ." *Id*. "Housing assignments are within the discretion of prison officials based on a variety of concerns and courts are not appropriate arbiters for resolving a dispute on the location selected to house a particular inmate."*Cordovano v. Dep't of Corr.*, 2014 U.S. Dist. LEXIS 24391 *3-4, No. 4:14cv8-MW/CAS (N.D. Fla., Jan. 23, 2014), adopted and dismissed by *Cordovano v. Dept. of Corr.*, 2014 U.S. Dist. LEXIS 24394 (N.D. Fla., Feb. 24, 2014).

Plaintiff did not allege that conditions were extreme or posed an unreasonable risk of injury to himself.  Plaintiff did not allege that inmate-on-inmate violence is the norm under any one of the Defendants' supervision, or that McNeil had access to readily available weapons to carry out his threats. And as to McNeil's threats, Plaintiff cannot simply conclude that the Defendants acted unreasonably or assert that the Defendants could have avoided further harm to escape a motion to dismiss.

As stated, Plaintiff never communicated to Hughes that he was in fear of

McNeil and did not want to share a cell with McNeil, relevant to show he was not objectively subjected to a substantial risk of harm. Plaintiff argues that Hughes and Richter failed to protect him because McNeil threatened to stab him. But, verbal threats are not enough to establish a substantial risk of serious harm under an Eighth Amendment claim. See *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989) (verbal taunts do not violate an inmate's constitutional rights); *Hernandez v. Fla. Dep't Corr.*, 281 F.App'x. 862, 865 (11th Cir. 2008) (holding that allegations of threats and verbal abuse, without more, are generally insufficient to establish a constitutional claim). Additionally, "[t]he known risk of injury must be 'a strong likelihood, rather than mere possibility,' before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citations omitted).

Finally, Plaintiff does not allege any facts to infer that any of the Defendants acted with the culpable state of mind necessary to be found liable for deliberate indifference. Plaintiff has not alleged any of the Defendants acted with "subjective recklessness as used in the criminal law" or that they "actually knew that their conduct—their respective own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*.  And in regards to Wheaton, Plaintiff failed to allege that she heard "threats of future harm," and then failed "to act on this knowledge

of a substantial risk of serious harm."

This case *sub judice* is akin to *Carter v. Galloway*. In *Carter*, the Eleventh Circuit Court of Appeals granted summary judgment to the defendants in a section 1983 action where the plaintiff who was a Level 1 (best behaved) inmate with no history of violence, was assaulted by a close security Level 5 (worst behaved) inmate with whom he shared a cell, and who was also pending reclassification to maximum-security status. Although the defendants knew the Level 5 inmate was a problem inmate and had been prone to violence, and the defendants knew from plaintiff's complaints that his cell mate was crazy, "this was not enough to show that defendants were deliberately indifferent to a substantial risk of serious harm." 352 F.3d at 1349-1350. Any "negligent failure" of the defendants to protect the plaintiff from attack did not create the sufficiently culpable state of mind necessary to satisfy the subjective awareness requirement. *Id*. at 1350.

Plaintiff may be attempting to assert a failure to intervene against Wheaton. A prison official can be liable under the Eighth Amendment for failing to take reasonable steps to protect a victim from an **ongoing assault** by another inmate. See *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)) (emphasis added). An officer who fails to intervene in a fight between inmates can only be held liable if

he or she "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." *Smith v. Andrews*, 2016 U.S. Dist. LEXIS 158786 *11-12, No. CV 114-206 (S.D. Ga. Nov. 16, 2016) (collecting cases), adopted by, 2016 U.S. Dist. LEXIS 170501, (S.D. Ga. Dec. 9, 2016) (Hall, C.J.).

Here, Plaintiff offers no facts to support a claim that Wheaton was physically able to intervene, had a realistic chance to intervene, and could do so on September 2, 2021. In fact, Plaintiff does not allege that Wheaton was present on September 2, 2021 when McNeil assaulted him with the handcuffs on McNeil's wrists. The bare allegations against Wheaton simply state that she was standing next to Richter on September 1, 2021 (the day before McNeil assaulted Plaintiff), made a comment to McNeil, and then walked away with Richter. Thus, Plaintiff fails to state a valid failure to intervene claim.

In the case *sub judice*, Plaintiff cannot support his deliberate indifference claim nor survive the Defendants' motion to dismiss regarding his claims. Criminal recklessness is a higher standard than more than mere negligence. Plaintiff cannot satisfy more than mere negligence, if at all. Certainly, Plaintiff did not allege deliberate indifference that rose to the criminal recklessness standard. Thus, Plaintiff alleged no constitutional violation, and Defendants are entitled to qualified immunity.

## *NELSON V. TOMPKINS*

In *Nelson v. Tompkins*, 89 F.4th 1289 (11th Cir. 2024), the Eleventh Circuit denied

qualified immunity to an intake officer in Georgia. The personal representative of

Nelson's estate filed suit against Sellers, among others, for deliberate indifference

under the Fourteenth Amendment.[5] *Nelson* is wholly indistinguishable from the

case at bar.

On August 25, 2020, Jayvon Hatchett ("Hatchett"), a Black man, stabbed a

white store clerk in Georgia, motivated by news reports of police shootings of

Black men. Hatchett was arrested the next day for aggravated assault and

possession of a weapon. The arrest report did not mention the victim's race or the

motive. During intake at the Georgia jail, Hatchett told Officer Sellers ("Sellers")

that he stabbed the white store clerk because of police shootings of Black people.

Sellers did not inform other jail staff of Hatchett's racially motivated crime.

Classification officers at the jail assigned Hatchett to a cell to share with a white

man, Nelson. Hatchett later strangled Nelson to death.  The classification process

did not include questions about racial motivation or racial prejudice. An expert

report indicated that Sellers had direct knowledge of the risk Hatchett posed to

---

[5]The same standard applies to both pretrial detainees under the 14th Amendment and convicted prisoners under the 8th Amendment for deliberate indifference. *See Carter v. Broward Cty. Sheriff's Dep't Med. Dep't*, 558 F. App'x 919, 922 (11th Cir. 2014).

white inmates because Hatchett's motivation for his crime was racial, and Sellers should have notified others. Classification officers testified that, had they known of the racial motive, they would not have housed Hatchett with white inmates. The district court denied Sellers's motion for summary judgment based on qualified immunity. The Eleventh Circuit affirmed, finding that a reasonable jury could conclude Sellers violated Nelson's clearly established constitution rights by failing to act on the known risk.

In the case at bar, none of the Defendants serve as an intake officer, like Sellers. None of the Defendants serve as a classification officer who apparently in Georgia assign inmates cells based on a detailed procedure, including analyzing an inmate's prior criminal record, disciplinary history while incarcerated, and a menagerie of other relevant factors. Additionally, there are no racial overtones in the instant action, which seems to have been a deciding factor in the *Nelson* case.

In Florida, at the time of the alleged incidents in this matter (August and September 2021), a structured inmate classification system was implemented. Rule 33-601-209, F.A.C. (March 6, 2014). At the time, the ICT consisted of the "warden or assistant warden, classification supervisor, chief of security, and other members as necessary when appointed by the warden or designated by rule," who are "responsible for making work, program, **housing** and inmate status decisions

at a facility and for making other classification recommendations to the [SCO]." Rule 33-601-209, F.A.C. (emphasis added)  The SCO is the "office or office staff at [the Florida Department of Corrections'] central office level that is responsible for the review of inmate classification decisions." Rule 33-601-209, F.A.C.  The SCO's "[d]uties include approving disapproving, or modifying [ICT] recommendations." Rule 33-601-209, F.A.C. (March 6, 2014) Plaintiff did not allege that this procedure was not followed in his case.

Moreover, what Plaintiff did allege was that Hughes told him the "moving" room made a decision that Plaintiff and McNeil were compatible to share a cell. We also know, based on Plaintiff's allegations that the "moving" room made a decision that Plaintiff and McNeil were compatible to share a cell immediately before Plaintiff was placed with McNeil (Doc. 40, ¶¶ 1, 15-16) (three hours passed between the time Plaintiff was originally placed in cell F2-205 to F2-120 "to be housed with inmate McNeil").

Based on this intricate and structured process followed in Florida, Plaintiff, objectively was not exposed to a substantial risk of injury. Based on this intricate and structured process followed in Florida, the Defendants who relied on the procedure, were not subjectively aware that their conduct - relying on the procedure - caused a substantial risk of serious harm. At least, they did not make

the inference by relying upon the procedure. Based upon their reliance of this process, it cannot be said that they acted unreasonably to any risk or acted with "subjective recklessness as used in the criminal law."

Notably, the Eleventh Circuit's en banc opinion in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) and its companion case of *Wade v. McDade*, 2024 U.S. App. LEXIS 32496 (11th Cir. Dec. 23, 2024), failed to mention *Nelson*, even though *Nelson* was decided in January 2024; and, the first *Wade* was decided in July 2024 by the entire Eleventh Circuit panel, and the second *Wade* was decided in December 2024. Regardless, the decision in *Nelson* was limited to the specific facts and circumstances of that case. The court in *Nelson* stated, "Sellers had fair warning that it was unconstitutional **not to prevent** the **placement** of a **white** detainee alone in a cell with another detainee who, **the day before**, stabbed a stranger solely for being **white**." *Nelson*, 89 F.4th at 1299. (emphasis added). In closing, the Eleventh Circuit stated "[b]ecause controlling case law placed the illegality of Sellers's conduct 'beyond debate' by the time of Hatchett's arrest, Sellers is not immune from suit for that conduct." *Nelson*, at 1299-1300 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

## QUALIFIED IMMUNITY SHOULD BE GRANTED
## TO ALL DEFENDANTS

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). (other citations omitted) The deliberate indifference standard has been misunderstood and misapplied as the Eleventh Circuit described "[f]or more than 25 years now, our case law regarding deliberate indifference claim's mens rea element has been hopelessly confused resulting in what we'll charitably call a mess." *Wade*, 106 F.4th at 1253. The "mess" was created because the Eleventh Circuit's court decisions had "flip-flopped" between requiring "more than mere negligence" and requiring that they act with "more than gross negligence." *Wade*, at 1254. (citations omitted). Consequently, correctional officers were placed on notice that at some point in time prior to Wade that the standard was "more than gross negligence," which is another way of saying a significantly culpable state of mind in the criminal sense. Thus, the law in August and September of 2021, was not clearly established that the Defendants actions under the facts and circumstances of this case were a violation of an inmate's rights. *Maggio v. Sipple*.

## CONCLUSION

For all the reasons set forth above, the allegations in the Complaint against the Defendants should be dismissed with prejudice for failure to state a cause of action and qualified immunity granted to each Defendant.

## CERTIFICATE OF COMPLIANCE

I certify that this Memorandum complies with the word count limitation set forth in the Local Rule 7.1(F). The motion is 397 words, which is less than 500 words. The Memorandum contains 7,831 words, excluding the case style, signature block and the certificate of service which are excluded from the work limit.

Dated this 11th day of November, 2025.

BY: /s/ Pamela E. Langham
Pamela E. Langham, Esquire
Florida Bar No.: 0910767
PAMELA E. LANGHAM, P.A.
186 N. Palafox
Pensacola, FL 32502
1.850.341.1369
pam@langham.net

Attorney for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>November 11, 2025</u>, I electronically filed the

foregoing document with the Clerk of Court utilizing the Florida Courts' E-Portal

Filing System and a copy of the filing will be sent by U.S. regular mail on

<u>November 12, 2025</u> to the following at the address listed:

Kenneth Warren Ford
DC# 167315
South Bay Correctional Facility
600 U.S. Highway 27 South
South Bay, FL 33493-2233


BY: <u>/s/ Pamela E. Langham</u>
        Attorney