UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH WARREN FORD,
              Plaintiff,      CASE NO.: 3:24cv570/LAC/ZCB
vs,
CHRISTOPHER HUGHES, et.al,    "SECOND AMENDED COMPLAINT"
              Defendants.

PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS
              MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6) and Courts Order Document #60 Plaintiff,
Kenneth Ford states the following:

STATEMENT OF THE CASE

This is a §1983 action filed pro se, which raises claims of
failure to protect. The Plaintiff seeks that this case proceed to
trial, compensatory, punitive and nominal damages, the cost of litigation
in this suit and Attorney fees in the event counsel is appointed.

STATEMENT OF FACTS

The, "SECOND AMENDED COMPLAINT" asserts that on
August 31, 2021 at approximately 12:30pm, plaintiff while incar-
cerated at Santa Rosa Correctional Institution on Close Manage-
ment Status, was ordered to pack his property to be moved from
G2-205 to F2-205 along with his cell-mate for approximately
(4) four months. (Doc. 40 at ¶ 1) When inmates cannot be placed in the same
cell, the housing supervisor will place the inmate in administrative
confinement until the issue can be resolved. F.A.C. Rule 33-601.800(6)(9); and
F.A.C. Rule 33-601.800(6)(d), and (Doc. 40 at ¶¶ 8-12). As plaintiff arrived in F-
Dorm, he and aforementioned cell-mate were housed together in cell#F2-
205. (Doc. 40 at ¶14). At approximately 4:30pm officer Goddard stated,

"Ford... I hope you haven't unpacked yet because I gotta move you again" then he was placed in handcuffs and escorted downstairs in front of cell #F2-120 to be housed with inmate McNeil, Joseph DC#C09032 (Id at ¶¶ 15-16). Inmate Joseph McNeil initial referral for C.M. was due to "A PATTERN OF PREDATORY ACTIONS WHICH MAKES AN INMATE A THREAT TO OTHERS" and while on C.M. he continued his actions by increasing disciplinary reports (D.R.'s) for "Disobeying Order, Spoken Threats, Disorderly Conduct, (AGVT BTRY/ ATT INMATE) Aggravated Battery/attempt Inmate" and "boasting" of his reputation for "unprovoked stabbings of his random cellmates" at Santa Rosa C.I. Close Management Unit (Id at ¶¶ 17-18)

Officer Goddard and Sergeant Manners, knowing of McNeil's violent reputation, called Defendant Hughes as a result of knowing Plaintiff was being moved inside the cell with him while aware of the "specific risk of harm" posed. Defendant Hughes was the housing supervisor (Id at ¶ 21), INFRA. Hughes entered F2 announcing, "I just got on shift and have all this paperwork and moving to do, I'm not with his bullshit today." (Doc. 40 at ¶ 22) As plaintiff was being escorted he noticed Hughes in front of cell#F2-120 listening to multiple inmates behind cell doors "brief him regarding McNeil's reputation of "unprovoked stabbing of his random cellmates, warning him that additional paperwork and a move was necessary due to the risk of harm McNeil posed (Id at ¶ 23) Upon seeing Plaintiff at his cell-front, inmate McNeil began to make a "contextually-credible threat" while staring directly at Defendant Hughes who was present at his cell door by yelling, "He not coming in here... I don't want no room-mate because I'm already on my way back to C/M, I and if you put him in here, it's gonna be problems (Id at ¶ 24) Inmates in other cells warned Hughes not to house Plaintiff with McNeil, citing McNeil's recent assault on his cellmate and violent past (Doc. 40 at ¶ 25). Defendant Hughes heard the inmates yet still responded, "Oh he's coming in there... you don't run nothing inmate! (Id at ¶ 26).

2

Subsequently, inmate McNeil "contextually-credible threat" became bolder. He exclaimed, "I will stab him like I did my bunky before if you put him in here with me!"(Doc.40 at ¶27) Some inmates encouraged Hughes to move Plaintiff somewhere else while others encouraged Hughes "to not follow the rules," and put Plaintiff in the cell with McNeil (Id at ¶28). Hughes nodded in agreement (Id at ¶29). Defendant Hughes then proceeded to glance at Plaintiff then McNeil sizing them up while considering following the inmates advice (Doc.40 at ¶30). McNeil observed Defendant Hughes actions and as a result showed him disciplinary reports he received for stabbing his cell mates in the past while declaring, "Captain Hughes you know me and what I will do because you saw my last one so you better do your paperwork and find that dude another cell (Id at ¶31). Hughes read McNeils discipli-nary reports and after knowing McNeil made a "contextually-credible threat", and knowing FDC's rules, Hughes said, I don't have time for this, I'm getting the gas and camera so I can spray you for refusing him and then afterwards...he's still coming inside!"(Id at ¶32-33)

Hughes knew he should have called the moving room to inform them of McNeils threats so that Plaintiff could be reassigned housing but did not. (Doc.40 at ¶35) and INFRA. After Hughes ordered McNeil to be gassed, McNeil agreed to allow Plaintiff into the cell (Doc.40 at ¶36-41). Plaintiff then told Hughes "I'm not on D/C status and I'm on my way back to C.M. III where he's saying he's on D/C status and on his way back to I... we're not compatible. One of the inmates housed in F2-103 or F2-104 known as, "Soldier P" yelled to Hughes, " Damn Cap...you really gonna put that man in there with that check-in bug knowing he on his way back to I for stabbing his bunky and done told you he gonna do that man the same way... for real Cap?... You knowing the man reputation Cap.? Man this shit crazy (Doc.40 at ¶42-45) Hughes and Plaintiff both starred towards the direction of cell # F2-103 or F2-104 acknowledging "Soldier P" protest then retorted, " the moving room say yall compatible... you going in there. (Id at ¶46-48)

3

The next day, on September 1, 2021, Defendants Richter and Wheaton entered F-Dorm where some of the same inmates that informed Hughes on August 31, 2021 about McNeil's violent history and tendencies proceeded to inform them (Doc. 40 at ¶¶ 49-62). As Richter and Wheaton approached, plaintiff stopped them in front of his cell # F2-120 stating to Richter "sir... this inmate has threatened to stab me like he did his bunky before and he tried to refuse me yesterday but they forced me inside... On top of that, he's on D/C status and I'm A/C on my way to C.M.III... Man I don't feel safe in here; you see I still ain't unpacked my property and slept on the floor by the door last night, Dude say he on his way back to C.M. I, I need to be moved. (Doc. 40 at ¶ 63-64) Defendant Richter stated "It don't matter if you on A/C and he's on D/C and if you think otherwise, write it up". (Doc. 40 at ¶ 65) Wheaton responded to McNeil plea with, "Stop being a bitch" and walked away with Richter (Doc. 40 at ¶ 66-68)

On September 2, 2021 Plaintiff was placed in handcuffs for showering then proceeded to stand at the back of the cell facing the wall as required (Doc. 40 at ¶ 70). Likewise McNeil proceeded to be handcuffed in similar fashion. However once his left wrist was handcuffed, he quickly snatched it back inside the food flap while using it as a weapon to repeatedly strike plaintiff with the handcuff attached to his left wrist brutally across the left side of his facial, ear, and head area approximately 8-10 times. (Doc. 40 at ¶ 71-75)

Plaintiff initiated a grievance on September 8, 2021 (denied) and September 16, 2021 (granted) seeking that the videos be held so that he would have permission to look at them in F-Dorm where the attack occurred once he filed his suit (Doc. 40 at ¶ 76-77).

# MEMORANDUM

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its 'face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed 2d 929 (2007)), "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level... "Twombly, 550 U.S. at 555 (citations ommitted).

To state a claim for relief under 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law, Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir, 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal See, e.g., Bingham v. Thomas, 654 F.3d 1171, 1176-77 (11th Cir, 2011)(affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), abrogated on other grounds by Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir 2024)(en banc).

Plaintiff raises a claim that the Defendants failed to protect him from his room-mate assault in violation of his rights under the Eighth Amendment. see (Doc. 40)("Complaint)The Eleventh Circuit has held the Eighth Amendment "impose[s] a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" Mosley v. Zachery, 966 F.3d 1265, at 1270 (11th Cir. 2020)(quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed 2d 811 (1994)). This "includes 'protecting prisoners from violence at the hands of other prisoners.'" Id, (quoting Farmer, 511 U.S. at 833). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To

establish a 1983 claim for deliberate indifference to safety, under the Eighth Amendment, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F. 3d 1227, 1233 (11th Cir. 2019).

When examining the first element - a substantial risk of serious harm - courts use an objective standard. See *Marsh v. Butler Cnty., Ala.*, 268 F. 3d 1014, 1028-29 (11th Cir. 2001)(en banc), abrogated on other grounds *Twombly*, 550 U.S. at 561-63. In the prison setting, a risk of harm to some degree always exists by the nature of it being a prison, *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313, 1323 (11th Cir. 2005). Thus, successful failure to protect claims will generally require some further reason - beyond a plaintiff feeling threatened by his incarceration with other offenders convicted of violent and/or gang-related offenses - that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility of serious harm. See *Marbury*, 936 F.3d at 1236. A plaintiff must "show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety," *Id.* at 1233 (internal quotation marks omitted). "Plaintiffs can make this showing by demonstrating either a 'general threat' to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a 'specific threat' to the prisoner." *Spradlin v. Toby*, No. 5:23-cv-328 (MTT), 2024 U.S. Dist. LEXIS 147997, 2024 WL 3881483, at *4 (M.D. Ga. Aug. 19, 2024)(quoting *Marbury*, 936 F.3d at 1233, 1235). To constitute a substantial risk of serious harm, there must be "a strong likelihood, rather than a mere possibility, of grievous injury," *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024). Moreover, the risk must be specific and imminent; "a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).

"To establish the second element - deliberate indifference - a plaintiff must

6

[show] that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm; (2) "disregarded that risk"; and (3) "acted with subjective recklessness as used in the criminal law." Spradlin, 2024 U.S. Dist. LEXIS 147997, 2024 WL 3881483, at *4 (quoting Wade, 106 F.4th at 1255). To satisfy the subjective awareness component, a plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] also drew] the inference." Marbury, 936 F.3d at 1233. Whether a risk has been disregarded is an objective inquiry, requiring a plaintiff to show that the defendant "responded to the known risk in an unreasonable manner, in that he...knew of ways to reduce the harm but knowingly or recklessly declined to act." Id. To "prove that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm[.]" Wade, 106 F.4th at 1255. However, even if a defendant knows of a risk but "respond(s) reasonably" to that risk, he "cannot be found liable under the Eighth Amendment [.]" Id. (internal citations and quotation marks omitted).

To establish the final element - causation - the "plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 133. "This causal element requires proof that the officer (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." Nelson, 89 F.4th at 1298 (internal quotation marks omitted).

It is well settled and undisputed law that "(a) prisoner has a right to be protected from the constant threat of violence..." 636 F.2d at 1373, citing Withers v. Levine, 615 F.2d 158 (4th Cir, cert. denied, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed. 2d 59 (1980); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974); Woodhouse v. Virginia, 487 F.2d 889 (4th Cir. 1973) "When prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners and the level

7

of violence becomes so high...it constitutes cruel and unusual punishment..." 636 F.2d at 1374, citing McCray v. Sullivan, 509 F. 2d 1332 (5th Cir.), cert. denied, 423 U.S. 859, 96 S. Ct. 114, 46 L.Ed.2d 86 (1975). Gates, supra; see Jones v. Diamond, 636 F.2d 1364, 1374 (5th Cir. 1981) (en banc). This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials when officials are aware of a danger to an inmates health and safety, however, as appears to be, the case when an inmates is threatened to be stabbed or killed by another inmate, it does violate the constitutional proscription against cruel and unusual punishment to fail to afford that inmate reasonable protection, see and compare Rodriguez v. Sec'y For Dept of Corrs, 508 F.3d 611, 616 (11th Cir. 2007)

The doctrine of qualified immunity protects agents of the government "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982)). To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority, when the allegedly wrongful acts occurred." Robinson v. Sauls, 46 F. 4th 1332, 1340 (11th Cir. 2022). Once this showing is made, the burden shifts to the plaintiff to "show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id at 1340-41. The plaintiff must establish both prongs to defeat qualified immunity; however, courts may address them in either order. Pearson, 555 U.S. at 242. "Qualified immunity 'gives ample room for mistaken judgments but does not protect 'the plainly incompetent or those who knowingly violate the law.'" Kingsland v. City of Miami, 382 F.3d 1220, 1231 (11th Cir. 2004)(quoting Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed. 2d 271 (1986)), abrogated on other grounds by Washington v. Howard, 25

8

F.4th 891 (11th Cir. 2022).

## DEFENDANTS HUGHES, RICHTER, AND WHEATON ALL VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

According to Plaintiff, officer Goddard and Sergeant Manners knew of McNeils boastful reputation of "unprovoked stabbings of his random cellmates" and as a result of knowing Plaintiff was being moved inside the cell with him while aware of the "specific risk of harm" posed called Defendant Hughes; the Captain and (O.I.C.) Officer In Charge. (Doc. 40 ¶ 21). Defendant Captain Hughes entered F2 announcing, "I just got on shift and have all this paperwork and moving to do. I'm not with his bullshit today" while walking towards McNeil cell front. (Id at ¶ 22)

Defendant's Hughes, Wheaton, and Richter were aware of McNeils reputation of "unprovoked stabbings of his random cellmates" and the specific risk of harm he posed to other inmates due to being "personally involved" with exercising their skills of crisis intervention, counseling techniques, subduing him when violent or uncooperative, or defending persons against his attacks or other approved methods. (Doc. 40 ¶ 20)

As plaintiff was being escorted he noticed Defendant Hughes standing in front of cell #F2-120 listening to multiple inmates behind cell doors "brief" him regarding McNeils reputation of "unprovoked stabbings of his random cellmates". Defendant Hughes looked agitated while shaking his head as inmates asserted, "Cap look like you're gonna have more paperwork and moves to do because that dude is a bug and you gonna have to move one of them because he likes to stab his room-mates so that he can be housed alone. (Id at ¶ 23)

Upon seeing Plaintiff at his cell-front, inmate McNeil began to make a "contextually-credible threat" while staring directly at Defendant Hughes who was present at his cell door by yelling "He not coming in here...

9

I don't want no room-mate because I'm already on my way back to C.M. I and if you put him in here, its gonna be problems." (Id at ¶ 24)

Simultaneously, inmates housed across the hall in cells #F2-103, #F2-104, and next door in cell # F2-119 continued to protest in briefing Defendant Hughes while stating, "Don't put him in there... That man a bug and you know he just left F-Dorm for checking in on his bunky, and stabbing the man while he was asleep... He going back to C.M. I and has nothing to lose Cap; they not compatible." (Id at ¶ 25)

Defendant Hughes heard the inmates loud and clear however he still responded, "Oh he's coming in there... you don't run nothing inmate." (Id at ¶ 26)

Subsequently, inmate, McNeil "contextually-credible threat" became bolder. He exclaimed, "I will stab him like I did my bunky before if you put him in here with me!" (Id at ¶ 27)

Nonetheless Defendant Hughes eventually placed Plaintiff inside the same cell with McNeil where two days later McNeil assaulted Plaintiff with handcuffs (Doc. 40 ¶ 28-77). Thus, Plaintiff argues that Defendants Hughes, Richie, and Wheaton knew of the particular threat McNeil posed to Plaintiff and "showed deliberate indifference to the welfare and safety of Plaintiff" (Doc. 40)("Complaint"). Defendants argue that they are entitled to qualified immunity on these claims.

Threats between inmates are commonplace and thus, "[n]ot 'every injury suffered by one prisoner at the hands of another... translate into a constitutional liability for prison officials responsible for the victim's safety.'" Mosley v. Zachery, 966 F.3d 1265, 1276 (11th Cir. 2020)(omission in original)(quoting Bowen, 826 F.3d at 1320) Prison "officials must possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" Marbury, 936 F.3d at 1236 (citations omitted). Plaintiff, thus, must show that

10

he "suffered a deprivation that was, 'objectively, "sufficiently serious,'" and that he suffered that deprivation because Defendants Hughes, Richter and Wheaton were deliberately indifferent to risk of serious harm - in this case the risk of harm from putting Plaintiff in the cell with McNeil after McNeil threatened Plaintiff. Wade, 106 F.4th at 1262 (quoting Farmer, 511 at 834). "Whether prison officials had the requisite awareness of the risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013)(quoting Farmer, 511 U.S. at 842)."[B]efore Defendants awareness arises to a sufficient level of culpability, there must be much more than a mere awareness of [another inmate's] generally problematic nature."Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)(per curiam).

First, considering the elements of a failure to protect, deliberate indifference claim, Plaintiff must establish that he suffered a deprivation that was, "objectively, 'sufficiently serious,'" meaning that "a prison officials'act or omission must result in the denial of the 'minimal civilized measure of lifes necessities.'" Farmer, 511 U.S. at 834 (citations omitted). "For a claim (like the one here) based on a failure to prevent harm, [the Plaintiff] must show that he was incarcerated under conditions posing a substantial risk of serious harm."Id. (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L.Ed. 2d 22 (1993)). To meet this element the Plaintiff must "at the very least show that a condition of his confinement 'pose[d] an unreasonable risk of serious damage to [Mr. Fords] future 'health' or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)(quoting Helling, 509 U.S. at 35). Construing the facts in the light most favorable to Plaintiff, housing Mr. Ford in a cell with a person who threatened to stab him then showed Disciplinary Reports to Hughes that he stabbed his cellmate before and would do Plaintiff the same way and/or who previously had been violent constituted an objectively sufficiently serious

11

risk of damage to Mr. Ford's future safety. See and compare to <u>Ortiz v. Ga. Dept of Corr.</u>, 2025 U.S. Dist. LEXIS 59885; March 31, 2025; (Doc. 40, ¶ IV 24-35). The Court, therefore, must consider whether (1) Defendants Hughes, Richter, and Wheaton were "subjectively aware that [Mr. Ford] was at risk of serious harm"; (2) they "disregarded that risk," (3) they "acted with 'subjective recklessness as used in the criminal law,'" and (4) the "necessary causal link" has been established. <u>Wade</u>, 106 F. 4th at 1255 (first quoting Hoffer, 973 F.3d at 1270; and then quoting Farmer, 511 U.S. at 829); <u>Marbury</u>, 936 at 1233 (quoting Rodriguez, 508 F.3d at 622-23). Furthermore, Defendants Hughes, Richter, and Wheaton "'cannot be found liable under the Cruel and Unusual Punishment Clause' if [they] 'responded reasonably to the risk.'" <u>Wade</u>, 106 F. 4th at 1262 (quoting Farmer, 511 U.S. at 844-45).

## A. Defendant Hughes

Construing the evidence in the light most favorable to Plaintiff, Defendant Hughes was subjectively aware of a substantial risk of harm to Mr. Ford, did not respond reasonably to the risk, and there was a causal connection between his actions and the harm to Mr. Ford. <u>Ortiz v. Ga. Dept of Corr.</u>, 2025 U.S. Dist. LEXIS 59885; March 31, 2025 (quoting <u>Wade</u>, 106 F. 4th at 1255). Defendant Hughes argues that he was not deliberately indifferent to Mr. Ford safety and Plaintiff does not state a claim for failure to protect because although when he put him in the cell with Mr. McNeil and heard McNeils threat directed at him, Plaintiff did not allege that McNeil had a knife or other weapon or access to a weapon to stab him and carry out any threat made against him. He remains silent regarding the allegations that McNeil observed his actions before considering following the inmates advice when placing Plaintiff inside then left the cell door to retrieve "evidence in the form of disciplinary reports he'd received for stabbing his cell-mates in the past" while placing them on the window to be read by defendant Hughes so he would know of the specific risk of violence he posed while declaring angrily "Captain

12

Hughes you know me and what I will do because you saw my last one so you better do your paperwork and find that dude another cell. (Doc. 40 at ¶¶ 30-33)

This is significant because when considered alongside Defendant Hughes prior knowledge of McNeil's violence, evidence Defendant was subjectively aware that McNeil's threat posed a substantial risk of harm to Ford. see and compare to Ortiz v. Ga. Dep't of Corr., 2025 U.S. Dist. LEXIS 59885; March 31, 2025

In Ortiz a constitutional violation was established by the Plaintiff against Defendants who had the authority to separate Mr. Hardy and Mr. Ortiz pending consideration of the threat made to harm Ortiz by Hardy. Id. The fact that Plaintiff did not allege that Hardy had a knife or other weapon or access to a weapon to stab him and carry out any threat made against him was irrelevant as should be in this cause. Id.

Further, Defendant Hughes also had occasion to observe McNeil's hostility towards Ford before the fatal assault due to not wanting Plaintiff inside the cell and had to threaten to spray McNeil with mace to get McNeil to surrender. Id. (Doc. 40 at ¶¶ 32-36)

Construing this in the light most favorable to Plaintiff and considering that, after McNeil threatened Ford and before leaving the two in the cell together Defendant Hughes did not follow procedure and report the threats made to harm Plaintiff by McNeil to the moving room and considering that Defendant Hughes knew of McNeil's violent tendencies, a reasonable jury could find that Defendant Hughes was subjectively aware of the "facts from which the inference could be drawn that [there was] a substantial risk" that McNeil would carry out the threat and harm Ford and "also drew] [that] inference". Rodriguez, 508 F.3d at 622 (citation omitted); see also

13

Garrison v. Ivey, No. 5:23-cv-00348-TES-CHW, 2024 U.S. Dist. LEXIS 237206, 2024 WL 5325581, at *9-10 (M.D. Ga. Nov. 27, 2024)(finding officer was not entitled to qualified immunity where inmate told officer defendant that he would get help, the officer did not return, and the inmate was subsequently attacked by cellmate with a shiv)

Objectively, it cannot be reasonably inferred that in the absence of a written request for protective management, Plaintiff was not at a substantial risk of harm. We know this because a prison "official responds to a known risk [of serious harm] in an objectively unreasonable manner if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways to reduce the harm but recklessly declined to act which is exactly what Plaintiff asserts against Hughes." Rodriguez, 508 F.3d at 620 (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995)). A plaintiff is not required to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842 (citations omitted). In Ortiz, Defendant Bell testified that if he had heard of a threat to Mr. Ortiz's life, he would have had the authority to stop the process of putting Mr. Ortiz in the cell with Mr. Hardy to discuss the issue with a supervisor: "[I]f . . . I have an issue like that, I [am] going to notify [a supervising officer], hey, we got a situation down here" and "we will just have to let the supervisor know what [is] going on before I put him inside that cell." INFRA Defendant Bell further testified: "I wouldn't dare stick another offender in the cell, especially if they have told me what they are going to do, like that." Id.

In addition Nelson v. Tompkins is extremely instructive in this regard simply due to Hatchett like McNeil telling officer Sellers that he stabbed a white store clerk because of police shootings of

14

Black people (McNeil telling Hughes he stabbed his bunky before and would do Plaintiff the same because he did not want to be housed with him) and Sellers like Defendant Hughes failing to inform the moving room or other jail staff of Hatchett's racially motivated crime. see and compare to Nelson v. Tomphins, 89 F.4th 1289 (11th Cir. 2024); and Tucker v. Wellpath, LLC :: 2025 U.S. Dist. LEXIS 7644 :: Jan. 15, 2025 (failing to refer Jackson for further assessment and treatment despite knowing he was suicidal).

Here Defendant Hughes was called by officer Goddard and Sergeant Manners due to them being aware of McNeil's boastful reputation of "unprovoked stabbings of his random cellmates" while knowing Plaintiff was being moved inside the cell with him. Doc. 40 at ¶ 21

The reason this fact is so important is because in Nelson the classification process did not include questions about racial motivation or racial prejudice yet an expert report indicated that Sellers had direct knowledge of the risk Hatchett posed to white inmates because Hatchett's motivation for his crime was racial and Sellers should have notified others. INFRA Classification officers testified that, had they known of the racial motive, they would not have housed Hatchett with white inmates. Id.

In the case at bar, the Defendant argument that none of them serve as an intake officer like Sellers is wrong. We know this due to officer Goddard and Sergeant Manners calling Defendant Hughes due to them being aware of McNeil's boastful reputation of "unprovoked stabbings of his random cellmates" while knowing Plaintiff was being moved inside the cell with him. INFRA.

From this angle we see that Hughes was actually a supervising officer whom Defendant Bell in Ortiz stated "[I]f... I have an issue like that, I [am] going to notify [a supervising officer] hey, we got a situation down here" and "we will just have

15

to let the supervisor know what [is] going on before I put him inside that cell... I wouldn't dare stick another offender in the cell, especially if they have told me what they are going to do, like that." INFRA

In Florida, at the time of the alleged incidents in this matter (August and September 2021), a structured inmate classification system was implemented yet just like Georgia, assigned inmates cells based on a detailed procedure, including analyzing an inmates prior criminal record, disciplinary history while incarcerated, and a menagerie of other relevant factors. Rule 33-601.800, F.A.C. Plaintiff did not allege that the classification procedure was not followed yet **housing** and inmate status decisions procedure was not followed. For example, Defendant Hughes was appointed by the warden or designated by rule and was responsible for making housing decisions as Housing Supervisor. see Rule 33-601.800, F.A.C.(1)(n)(Doc. 40 at ¶¶5-12); (Doc. 40 at ¶ 21)

Rule 33-601.800, F.A.C.(6)(c) states "Prior to placing inmates in the same cell, the inmate will be reviewed by the housing supervisor to determine if any of the inmates in the C.M. unit are a threat to the inmate being placed, or if the inmate being placed is a threat to other inmates in the unit. see also (Doc. 40 at ¶ 7)

Additionally, "If the inmate cannot be placed for the reasons stated in paragraph (6)(c), the housing supervisor will place or maintain the inmate in administrative confinement until the issue can be expeditiously resolved. The case will be immediately forwarded to the I.C.T. for review. The I.C.T. will review the case, interview the inmate, and forward recommendations to the SCO. The SCO will review the case and may interview the inmate before making a final decision on the inmates placement. Rule 33-601.800, F.A.C.(6)(d); (Id at ¶8)

It is the responsibility of officials employed in F.D.O.C. to follow this procedure and inquire if an inmate desires to be

16

placed in administrative confinement pending the outcome of an investigation for protective management. Id. This is the sole purpose of officer Goddard and Sergeant Manners notifying Defendant Hughes, INFRA

Officer Goddard and Sergeant Manners notified Defendant Hughes as Defendant Bell in Ortiz stated he would have done had he heard of a threat to Mr. Ortiz's life before McNeil even threatened to stab Ford. INFRA

However, once Defendant Hughes arrived his statement "I just got on shift and have all this paperwork and moving to do.. I'm not with his bullshit today" while walking towards McNeils cellfront shows that he knew that he had authority yet would exercise it how he chose. (Doc 40 at ¶22)

Defendant Hughes could have relied on the intricate and structured process followed in Florida which would have objectively not exposed Plaintiff to a substantial risk of injury when he heard McNeils threats directed at Ford (Id at ¶23-48). However, relying on such procedure would have been time-consuming in addition to the work which was already set out for him (Id at ¶33); INFRA

The reason why his response "the moving room say ya'll compatible... you going in there" was totally unreasonable now becomes clearer. (Doc. 40. at ¶47)

Housing and Inmate status decisions procedure relied on the housing supervisor to determine if any of the inmates in the C.M. unit were a threat to the inmate being placed, or if the inmate being placed is a threat to other inmates in the unit and if a threat was determined then it would be the housing supervisor responsibility to notify the moving room of such threat so the inmate could be reassigned housing, Rule 33-601.800 (6)(c), F.A.C.; Rule 33-601.

17

800(6)(d), F.A.C. (Doc. 40 at ¶¶ 4-12). Objectively, these facts do now show Plaintiff was exposed to a substantial risk of serious injury. Id. Defendant Hughes could not have understood that the team responsible for making decisions on Plaintiff's housing assignment had made a decision on the same day to place Plaintiff into the same cell as McNeil, indicating no substantial risk of harm was identified because officer Goddard and Sergeant Manners specifically called Hughes due to identifying a possible substantial risk of harm while aware that Hughes was indeed the housing supervisor. INFRA. Thus, as a member of the team responsible for making decisions on Plaintiff's housing assignment Defendant Hughes was obligated to notify the moving room of threats made by McNeil to harm Plaintiff. INFRA. When he read the disciplinary reports placed on the window by McNeil showing that he'd stabbed his cell-mates in the past yet withheld such information from the moving room resulting in Plaintiff being assaulted (2) two days later; a reasonable jury could conclude that the risk of harm to Plaintiff's future health and safety was obvious, he knew of other ways to reduce the harm to Plaintiff yet failed to act and his actions were unreasonable. INFRA

In closing, the Eleventh Circuit stated "[B]ecause controlling case law placed the illegality of Sellers's conduct 'beyond debate' by the time of Hartsfield's arrest, Sellers is not immune from suit for that conduct" and neither is Defendant Hughes. Nelson, at 1299-1300 (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

Finally, it is clearly established law that "an officer violates [the duty to protect]if 'he knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any [reasonable]

18

action" to separate them." Nelson, 89 F.4th at 1299 (quoting Caldwell, 748 F.3d at 1102). Thus, if a jury finds that Defendant Hughes did not act reasonably in response to a known substantial risk of serious harm to Ford, then he would not be entitled to qualified immunity. Accordingly, Defendant Hughes is not entitled to qualified immunity on the failure to protect claim. Id. and INFRA

A claim is plausible where the plaintiff alleges facts that "allow the court to draw the reasonable inference "that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff claim. Bell Atlantic Corp. v. Twombly, 550 U.S, 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007). Plaintiff has met this burden and Discovery stages will result in evidence being presented in support of his claims for relief. INFRA.

B. Defendant's Richter and Wheaton

In a nutshell, Defendants Richter and Wheaton argument that Plaintiff does not allege they had direct knowledge of the statements and events that took place on August 31, 2021 is frivolous. INFRA.

In light of being informed by other inmates whom they argue are not credible sources, both Defendants failed to follow the required procedures outlined in Florida Administrative Code Chapter 33-602.220 (2) Procedures for Placement in Administrative Confinement (a)(b)

Contrary to their argument Plaintiff was not required to submit a signed written statement expressing fear for his safety in order to trigger an investigation by the Institutional Classification Team (I.C.T.) because he could have done so through

19

informal conversation as he did. Rodriguez v. Sec'y For Dept. of Corr, 508 F. 3d 611, 616 (11th Cir. 2007)(Johnson, who (like) Kugler had frequent face-to-face contact with inmates at ECI, testified in his deposition that inmates may also bring their security concerns directly to ECI officials through informal conversation).

Again as mentioned above, once an inmate expresses his fear of being stabbed or threatened to an officials attention they are obligated to inquire if the inmate is seeking protection and place him in administrative confinement which is why Johnson explained the protocol is triggered as follows in Rodriguez:

[If an inmate] comes to me and state[s] that he is in fear for his life, I am going to make him stand right there and I'm going to call the shift supervisor and explain to the shift supervisor, "This inmate stated he's in fear for his life, please place him in administrative confinement until we do a protective management review. Id.

Johnson explained correctly that a "protective management review" entails having a sergeant "go and investigate" the inmate's claims. Such a review requires that the sergeant "get all the statements from everybody" that the inmate says he is having trouble with. Id.

This is relevant only to demonstrate that, objectively, when Plaintiff informed Defendant Richter, "Sir... this inmate has threatened to stab me like he did his bunky before and he tried to refuse me yesterday but they forced me inside... On top of that, he's on DIC status and I'm A/C on my way to CM III... Man I don't feel safe in here; you see I still ain't unpacked my property and slept on the floor by the door last night. Dude say he on his way back to CM I; I need to be moved,"

20

Plaintiff was exposed to a substantial risk of harm or an extreme risk of substantial harm which the Defendants were well aware of. Doc. 40 at ¶ 63    Had Defendant Richter and Wheaton acted reasonably then Plaintiff would have first been separated from McNeil and placed in administrative confinement where only then he would have been afforded the opportunity to submit a signed written statement. Rules 33-602.221(2)(b) and 33-602.220(3)(c), Fla. Adm. Code (F.A.C). In this case, Plaintiff does not allege that he submitted the required paperwork for protection while in C.M. because when he did so through informal conversation, Defendant Richter and Wheaton both responded unreasonably to his fears and refused to place him in administrative confinement so that he could sign a written statement expressing fear or a request for protective management. (Doc. 40 at ¶¶ 64-68), and Id

Like Johnson and Kugler in Rodriguez, Discovery would reveal evidence that neither Richter or Wheaton could dispute that either one of them could have recommended to the classification team, housing supervisor, or moving room that Ford be held in administrative confinement or protective custody while the threats on his life were investigated. INFRA, Nor would they dispute the fact that each of them had independent authority to initiate a protective management review by placing him in administrative confinement where only then could he sign a written statement expressing fear or a request for protective management. INFRA.

Construing these facts in the light most favorable to Plaintiff that Defendant Richter and Wheaton had the authority to separate Ford and McNeil pending consideration of the threat, a reasonable jury could find that Defendants knew of other means to reasonably protect Ford, knew that leaving the inmates together after the threat would be insufficient to protect Ford, and disregarded the means available to them to reduce the risk of harm to Ford. INFRA

21

Accordingly, Plaintiff has established a constitutional violation. INFRA

Again, it is clearly established law that "an officer violates [the duty to protect] if he knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any [reasonable] action to separate them." INFRA. Thus, a jury could find that Defendants Richter and Wheaton did not act reasonably in response to a known substantial risk of serious harm to Ford and are not entitled to qualified immunity. INFRA.

## CONCLUSION

for all the reasons set forth above, the allegations in the Complaint against the Defendants should proceed to Discovery and at this stage their motion to dismiss should be denied.

Honorably Submitted

signed this 2ⁿᵈ day of February 2026 /s/

KENNETH FORD DC# 167315
SOUTH BAY CORR & REHAB FACILITY
600 U.S. HIGHWAY 275
SOUTH BAY, FLORIDA 33493

## CERTIFICATE OF COMPLIANCE

I certify that this Memorandum complies with the word count limitation set forth in the Local Rule 7.1(F) yet I am incarcerated and have no access to count the exact amount of words/ 6,666

Dated this 2ⁿᵈ day of February, 2026

KENNETH FORD DC# 167315
SOUTH BAY CORR. & REHAB FACILITY
600 U.S. HIGHWAY 275
SOUTH BAY, FLORIDA 33493

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been placed into the hands of Prison officials at SouthBay in SouthBay, Florida 33493-2233 for mailing via U.S. Postal Service mail on this 2nd day of February, 2026

/s/ KENNETH FORD DC#167315

23



KENNETH FORD DC#1675D
SOUTHBAY CORR. & REHAB FACILITY
600 U.S. HIGHWAY 27S
SOUTHBAY, FLORIDA 33493-2233

UNITED STATES DISTRICT COURT
1 NORTH PALAFOX STREET
PENSACOLA, FLORIDA 32502

LEGAL MAIL